Zaher ZAHREY, Plaintiff–Appellant,

v.

Martin E. COFFEY, Defendant–Appellee.

Docket No. 99–9119.

United States Court of Appeals,
Second Circuit.

Argued April 14, 2000

Decided July 20, 2000

344

Joel B. Rudin, New York, N.Y., for plaintiff-appellant.

Martin J. Siegel, Asst. U.S. Atty., New York, N.Y. (Mary Jo White, U.S. Atty., Jeffrey Oestericher, Asst. U.S. Atty., New York, N.Y., on the brief), for defendant-appellee.

(Joshua L. Dratel, New York, N.Y., Marshall A. Mintz, New York, N.Y., submitted a brief for amici curiae National Association of Criminal Defense Lawyers and The New York State Association of Criminal Defense Lawyers.)

Before: NEWMAN, KEARSE, and CABRANES, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal concerns the qualified immunity defense of a prosecutor accused of fabricating false evidence against a defendant. Zaher Zahrey appeals from the September 2, 1999, judgment of the United States District Court for the Southern District of New York (Loretta A. Preska,

District Judge), dismissing on the ground of qualified immunity Zahrey's claims against Assistant United States Attorney Martin E. Coffey. Coffey concedes, only for purposes of this appeal, that his alleged misconduct occurred while he was acting in an investigative capacity, for which only qualified, but not absolute, immunity is available. We hold that there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity, at least where the officer foresees that he himself will use the evidence with a resulting deprivation of liberty. We also believe that this right was clearly established in 1996, when Coffey's alleged misconduct occurred. In addition, we conclude that Zahrey's complaint, assumed for purposes of the appeal to be true, adequately pleaded a deprivation of liberty as a result of Coffey's alleged misconduct. Finally, we conclude that the allegations of the complaint suffice to indicate that a qualified immunity defense may not be sustained without further development of the facts. We therefore reverse and remand.

Background

In June 1998, Zahrey filed the instant action against various New York City police officers and Kings County prosecutors for conspiring to manufacture false evidence against him. In an amended complaint, he alleged that Coffey had conspired with the local defendants to manufacture false evidence for use against Zahrey in criminal and police disciplinary proceedings. The allegations against Coffey were based on a Fifth Amendment implied right of action, see *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and 42 U.S.C. § 1983. The amended complaint repeated allegations of wrongful conduct by the local defendants and, as to Coffey, alleged, somewhat inconsistently, that in part he had been misled by the local defendants into believing

their false evidence and using it to prosecute Zahrey and that in part he had conspired with the local defendants to manufacture additional false evidence, which he subsequently used against Zahrey. Zahrey sought to hold Coffey responsible only for his alleged misconduct occurring in the investigatory phase of the case, recognizing that Coffey is entitled to absolute immunity for his conduct during the prosecutorial phase. The core of the allegations against Coffey are that he joined a conspiracy that coerced two witnesses, Lisa Rivera and Sidney Quick, to falsely accuse Zahrey of crimes.

The complaint alleged the following facts pertinent to this appeal. In 1994, while working as a police officer for the New York Police Department ("NYPD"), Zahrey became the target of an investigation initially undertaken by the NYPD's Internal Affairs Bureau ("IAB") and the Kings County District Attorney. Their interest in Zahrey began after William Rivera, a former auxiliary police officer with whom Zahrey had grown up, was murdered. Rivera's family and friends asked Zahrey to find out the status of the investigation into the death. IAB detectives investigating Rivera's death ultimately asked Zahrey to assist them. Rumors began to circulate that Zahrey had been "corruptly associated" with Rivera. An IAB detective interviewed an alleged criminal associate of Rivera's, Sidney Quick, who was then in prison. The detective told Quick that he was investigating reports that Zahrey had given information to Rivera to facilitate the robbery of drug locations. Quick confirmed the detective's allegation.

In subsequent conversations, IAB detectives caused Quick to concoct false stories implicating Zahrey in robberies and a murder. In a tape-recorded interview, one detective said to Quick, who was then serving a term of six years to life, "If you give me Zack [Zahrey], I'll drive you home [from prison]." Quick later dropped his allegations that Zahrey had participated in fourteen robberies, but accused him of selling guns and drugs. The detectives also interviewed Lisa Rivera, William Rivera's

sister, who made allegations against her brother, but not against Zahrey.

On May 2, 1996, four co-defendants, two NYPD detectives and two assistant district attorneys, met with "federal prosecutors in Brooklyn" and "requested that the United States Attorney's Office take over the investigation of [Zahrey] and prosecute him." The United States Attorney's Office for the Eastern District of New York subsequently agreed to take over the investigation, and the matter was assigned to Coffey.

Coffey and other defendants made various promises to Lisa Rivera, a prospective federal grand jury witness, "in order to influence her testimony" against Zahrey, including helping her complete a drug rehabilitation program, helping her regain custody of her children, and providing financial assistance in connection with her relocation to a new residence. On June 25, 1996, Rivera testified before a federal grand jury investigating Zahrey. She claimed she overheard her brother tell an associate, shortly after an armored car robbery, that he had "an envelop[e] with cash proceeds of the robbery for 'Zack'." After Rivera testified, another defendant, an NYPD detective, helped Rivera move out of her drug rehabilitation program several months early and helped her move into a new residence. Rivera also received $1,300 toward her rent and security deposit from the Brooklyn District Attorney's Office and the NYPD.

On August 29, 1996, Coffey told a co-defendant, an IAB detective, that the United States Attorney would be willing to prosecute Zahrey only on the condition that Quick testify as a Government witness. In September 1996, Coffey and other defendants met with Quick several times and, according to the Complaint, "attempted to pressure and bribe him to falsely implicate" Zahrey. Coffey and others, in order to induce Quick to testify against Zahrey, promised him "that, regardless of what was written in his federal cooperation agreement, they would ensure

that he served no additional time in prison following his federal cooperation. Quick signed the agreement." Thereafter, Quick falsely testified against Zahrey.

The grand jury subsequently indicted Zahrey for conspiracy to commit robberies, among other charges, and he was arrested soon thereafter. He was held without bail for eight months. On June 27, 1997, a jury in the Eastern District acquitted Zahrey and three co-defendants of all the charges. In the instant action, Zahrey alleged that Coffey and the other defendants "conspired, acted in concert, and aided and abetted each other to do whatever was necessary, lawful or not, to cause [his] arrest, prosecution, pretrial detention," and that "[t]hroughout the period of the Conspiracy, the defendants pursued their objectives ... without probable or reasonable cause to believe plaintiff guilty of any crime."

Zahrey also alleged that pursuant to the conspiracy, the defendants, including Coffey, "pressured, bribed or otherwise improperly caused witnesses to give untruthful, erroneous, incomplete and/or misleading statements and testimony against" Zahrey, which, taken individually as well as together with other acts, "were the direct and proximate cause of plaintiff's wrongful and malicious prosecution."

Zahrey further alleged that by engaging in the above conduct, the defendants, including Coffey, deprived Zahrey of his constitutional right "[n]ot to be deprived of his liberty or property or to be arrested, detained or imprisoned except upon probable cause to believe him guilty of a crime, under the Fourth, Fifth, and Fourteenth Amendments," his constitutional right "[n]ot to be arrested, indicted, prosecuted, or detained upon the testimony of witnesses who had been illegally bribed or influenced for their testimony, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments, the right to grand jury indictment under the Fifth and Fourteenth Amendments, [and] the right to a fair trial under the Fifth, Sixth and Fourteenth Amendments."

On a motion to dismiss, the District Court dismissed the claims against Coffey on the ground of qualified immunity. Without determining whether a prosecutor's fabrication of evidence violated a constitutional right, the Court ruled that Coffey was entitled to qualified immunity because "the law was not 'clearly established' in 1996 that a prosecutor's fabrication of evidence violated a person's constitutional rights." *Zahrey v. City of New York*, No. 98 Civ. 4546 (LAP), 1999 WL 587904, at *6 & n. 2 (S.D.N.Y. Aug.4, 1999). A partial judgment was entered dismissing Zahrey's claims against Coffey. *See* Fed.R.Civ.P. 54(b). This appeal is from that judgment.

## Discussion

### I. Immunity for Prosecutors

▮ The nature of a prosecutor's immunity depends on the capacity in which the prosecutor acts at the time of the alleged misconduct. Actions taken as an advocate enjoy absolute immunity, *see Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity for "initiating a prosecution and ... presenting the State's case"), while actions taken as an investigator enjoy only qualified immunity, *see Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (qualified immunity for "perform[ing] the investigative functions normally performed by a detective or police officer") (*"Buckley III"*).[1] This immunity law applies to *Bivens* actions as well as actions under section 1983. *See Moore v. Valder*, 65 F.3d 189, 194 (D.C.Cir.1995) ("Intimidating and coercing

---

**1.** We identify the Supreme Court's decision as *"Buckley III"* to distinguish it from the earlier and later decisions of the Seventh Circuit in that litigation, which we discuss below. *See Buckley v. Fitzsimmons*, 919 F.2d 1230 (7th Cir.1990) (*"Buckley I"*); *Buckley v. Fitzsimmons*, 952 F.2d 965 (7th Cir.1992) (*"Buckley II"*); *Buckley v. Fitzsimmons*, 20 F.3d 789 (7th Cir.1994) (*"Buckley IV"*).

witnesses into changing their testimony is not advocatory. It is rather a misuse of *investigative* techniques. . . ."); *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir.1987) ("[W]hen a prosecutor performs an investigative or administrative function rather than a prosecutorial one, absolute immunity is not available.").

The line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw.[2] *See Hill v. City of New York*, 45 F.3d 653, 662–63 (2d Cir. 1995) (determining whether prosecutor's fabrication of evidence occurred at investigatory or advocacy stage required fact-finding); *Barbera*, 836 F.2d at 100–01 (distinguishing the supervision of law enforcement agencies in acquiring evidence from the organization and evaluation of evidence). For example, when a prosecutor is speaking with a potential witness prior to the witness's grand jury testimony, is the prosecutor preparing as an advocate or developing evidence as an investigator? That question need not be answered at this stage of this case because of the way both parties have proceeded. Zahrey is not disputing that Coffey is entitled to absolute immunity for his actions in presenting allegedly false testimony to the grand jury and in making allegedly false statements at a bail revocation hearing. Zahrey challenges only the ruling sustaining the qualified immunity defense to misconduct alleged to have occurred earlier while Coffey was acting in an investigative role. *See* Brief for Appellant at 4. For his part, Coffey has conceded, for purposes of this appeal, that the alleged misconduct concerning his fabrication of evidence entitled him, at most, only to qualified immunity. *See* Brief for Appellee at 8. If the

qualified immunity defense is not sustained on this appeal as a matter of law, he reserves the right to contend on remand that all of his actions were sufficiently within an advocacy role to merit absolute immunity. However, as a result of his concession on this appeal, we have no current dispute that some of his alleged misconduct was within his investigating role, to which only qualified immunity applies.

■ Qualified immunity protects a public official from liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Coffey contends that his qualified immunity defense was properly upheld both because a prosecutor's fabrication of evidence does not violate a constitutional right and because, if it does, such a constitutional right was not clearly established in 1996. The District Court accepted the second contention and explicitly declined to rule on the first contention. *See Zahrey*, 1999 WL 587904, at *6 & n. 2.

■ Usually, a court considering a defense of qualified immunity to a claim based on section 1983 or *Bivens* "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation," *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (internal quotation marks omitted), unless relevant circumstances, not present in the pending case, make it appropriate to begin

---

**2.** The majority opinion in *Buckley III* suggests that a prosecutor's conduct prior to the establishment of probable cause should be considered investigative: "A prosecutor neither *is*, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." 509 U.S. at 274, 113 S.Ct. 2606 (footnote omitted); *see id.* at 280–81, 113 S.Ct. 2606 (Scalia, J., concurring) ("It is certainly in accord with the principle [of absolute immunity for a prosecutor acting as an

advocate] to say that prosecutors cannot 'properly claim to be acting as advocates' *before* they have 'probable cause to have anyone arrested' . . . .") (quoting *Buckley III*, 509 U.S. at 274, 275, 113 S.Ct. 2606). All members of the Court recognized, however, that a prosecutor's conduct even after probable cause exists might be investigative. *See id.* at 274 n. 5, 113 S.Ct. 2606 (majority opinion); *id.* at 290, 113 S.Ct. 2606 (Kennedy, J., concurring in part and dissenting in part).

with the question of whether a right was clearly established at the time of the alleged violation, *see Horne v. Coughlin,* 191 F.3d 244, 249 (2d Cir.1999). We consider first the existence of the right Zahrey contends was violated and the related issue of whether his deprivation of liberty was a legally cognizable result of Coffey's alleged misconduct, and then consider whether the right Zahrey contends was violated was clearly established in 1996.

## II. The Existence of a Constitutional Right

### A. Identifying the Right

■ In ruling that the constitutional right allegedly violated was not clearly established in 1996, the District Court framed the issue as "whether the fabrication of evidence by a prosecutor *in and of itself* gives rise to an injury cognizable under the Constitution." *Zahrey,* 1999 WL 587904, at *6 (emphasis added). The Court thus viewed Zahrey's claim as limited to the assertion of a constitutional right not to have a prosecutor manufacture false evidence. Viewed that narrowly, the claim was properly rejected. The manufacture of false evidence, "in and of itself," in the District Court's phrase, does not impair anyone's liberty, and therefore does not impair anyone's constitutional right.[3] Thus, if Zahrey had claimed only that Coffey fabricated evidence and did nothing to precipitate the sequence of events that resulted in a deprivation of Zahrey's liberty, no constitutional violation would have been alleged. *See Buckley v. Fitzsimmons,* 20 F.3d 789, 795 (7th Cir.1994) (*"Buckley IV"*) (if prosecutor tortured witness to obtain statement implicating defendant and put statement "in a drawer, or framed it and

hung it on the wall *but took no other step,*" no constitutional right of defendant would be violated) (emphasis added); *Landrigan v. City of Warwick,* 628 F.2d 736, 744 (1st Cir.1980) ("[W]e do not see how the existence of a false police report, sitting in a drawer in a police station, by itself deprives a person of a right secured by the Constitution and laws.").

■ But Zahrey's claim, though premised on the manufacture of false evidence, is not limited to that act. Rather, he alleges an example of a classic constitutional violation: the deprivation of his liberty without due process of law.[4] The liberty deprivation is the eight months he was confined, from his bail revocation (after his arrest) to his acquittal, and the due process violation is the manufacture of false evidence. The complaint alleges that the deprivation of the liberty interest was the result of the due process violation.

However, although it is too limited to state the right as a right not to have a prosecutor fabricate evidence, it is too broad to state it as a right not to be deprived of liberty without due process of law. The Supreme Court has instructed courts encountering a qualified immunity defense to claimed violations of constitutional rights to consider carefully "the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). If the right is identified at a high level of generality, such as the right not to be deprived of liberty without due process of law, the concept of qualified immunity would become meaningless because every government officer is reasonably aware of a right

---

**3.** A prosecutor's manufacture of false evidence might well subject the prosecutor to criminal penalties, *see, e.g.,* 18 U.S.C. § 1622 (subornation of perjury), or disciplinary sanctions, *see* N.Y. Comp.Codes R. & Regs. tit. 1200, § 33(a)(6) (2000) (DR 7–102(a)(6)).

**4.** Litigants sometimes speak of a "right to due process." *See, e.g., Powers v. Coe,* 728 F.2d 97, 101 (2d Cir.1984) ("Powers claims that

... he was deprived of his rights to a fair trial, to fundamental fairness, and to due process."). But the Constitution does not guarantee "due process" in the abstract; it guarantees that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V; *see id.* amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law....").

defined that broadly. *See id.* On the other hand, the right need not be identified with such particularity that qualified immunity would be a defense "unless the very action in question has previously been held unlawful." *Id.* at 640, 107 S.Ct. 3034.

■ It is arguable that in this case the right should be identified as the right not to be deprived of liberty as a result of any governmental misconduct occurring in the investigative phase of a criminal matter. A right defined that broadly, however, would cover too much ground because some investigative actions, though fairly labeled as "misconduct," might not merit condemnation as a denial of due process. On the other hand, the right need not be identified at such a level of particularity as to focus only on fabrication of evidence by a prosecutor acting in an investigating capacity. Coffey has conceded, for purposes of this appeal, that he was acting in an investigating capacity, a capacity that entitles him, at most, only to qualified immunity. The Supreme Court's rationale for according only qualified immunity to prosecutors who act in an investigating capacity is that their conduct in that capacity should be judged in the same manner as other investigating officers. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is 'neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.'" *Buckley III,* 509 U.S. at 273, 113 S.Ct. 2606 (quoting *Hampton v. Chicago,* 484 F.2d 602, 608 (7th Cir.1973)).

■ We think the right at issue in this case is appropriately identified as the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity. Understood this way, we conclude that the right at issue is a constitutional right, provided that the deprivation of liberty of which Zahrey complains can be shown to be the result of Coffey's fabrication of evidence.

B. Determining Whether a Deprivation "Results" from Misconduct

■ Courts considering whether the deprivation of a plaintiff's liberty is the legally cognizable result of a government officer's misconduct have approached the issue in either of two ways: (1) as a separate issue of causation, or (2) as part of the right allegedly violated. The choice arises primarily in cases where the action of some other person occurs after the defendant's alleged misconduct but before the deprivation of liberty.[5] In most cases, courts consider causation as a separate issue. For example, in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court faced the issue of a police officer's liability under section 1983 for presenting an insufficient affidavit to a judicial officer who issued a warrant resulting in the plaintiff's arrest. Invoking the frequently quoted statement from *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that section 1983 " 'should be read against the background of tort liabil-

5. For many claims of a denial of a constitutional right, courts need not analyze explicitly the link between the initiating act of misconduct and the consequent denial of the right because the alleged act of misconduct itself impairs the right without any intervening event or action of another person. Thus, denying a permit for a parade under an unconstitutionally vague ordinance itself denies the right to exercise the free speech right of holding a parade. Similarly, using excessive force denies the right to be free of excessive force, and the warrantless search of a home, absent exigent circumstances, denies the right not to have one's privacy violated by an unreasonable search.

But some unlawful actions deny a person a constitutional right only when they are the precipitating cause of a sequence of events that result in an ultimate impairment of a right. *Wilson v. Layne* illustrates the point. When police officers invited reporters to "ride along" to a suspected crime scene and enter a house for which the officers had a search warrant, the Fourth Amendment rights of the homeowner were not violated until the reporters accepted the invitation and decided to enter. *See* 526 U.S. at 614 n. 2, 119 S.Ct. 1692 ("[T]he violation of the Fourth Amendment is the presence of the media ... in the home.").

**350**

ity that makes a man responsible for the natural consequences of his actions,'" the Court rejected the trial court's reasoning that the judicial officer's decision to issue the warrant broke the "causal chain between the application for the warrant and the improvident arrest." *Malley,* 475 U.S. at 344–45 n. 7, 106 S.Ct. 1092. Similarly, the Court has discussed causation separately in considering whether a municipality could be liable under section 1983 for a government official's misconduct, *see City of Canton v. Harris,* 489 U.S. 378, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (plaintiff must prove that deficiency in city's training program "*actually caused* the police officers' indifference to her medical needs") (emphasis added) (footnote omitted); *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature *caused* a constitutional tort.") (emphasis added), as have courts of appeals in considering one of the grounds on which section 1983 liability may be imposed on supervisory officials, *see, e.g., Breaux v. City of Garland,* 205 F.3d 150, 161 (5th Cir.2000) (supervisor may be liable if "his conduct directly *causes* a constitutional violation...."); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

On the other hand, the Supreme Court has subsumed the causation issue within the definition of the constitutional right in ruling that a state parole board had not violated the Fourteenth Amendment by releasing a prisoner who committed a murder five months later. *See Martinez v. California,* 444 U.S. 277, 285, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). Even if state tort law would have regarded the parole board's decision as the proximate cause of the murder, the Court reasoned, the board's release decision "did not 'deprive' appellants' decedent of life within the meaning of the Fourteenth Amendment" because the murder "is too remote a consequence of the parole officers' action to hold them responsible" under section 1983. *Id.*

■ These alternative approaches could apply to most claims under the Due Process Clauses, especially claims of a liberty deprivation allegedly resulting from misconduct occurring in a criminal trial. If, for example, a prosecutor places in evidence testimony known to be perjured or a trial judge makes a racially disparaging remark about a defendant, no deprivation of liberty occurs unless and until the jury convicts and the defendant is sentenced. The misconduct can be viewed as the cause of the ultimate deprivation of liberty, although courts would probably refer to such misconduct as itself the denial of a constitutional right. If the trial was aborted before a verdict, it could be said either that the misconduct did not cause a deprivation of liberty or that no constitutional right was violated. Thus, in the pending case, whether Zahrey's deprivation of liberty (the arrest after indictment and the incarceration after revocation of bail) can be considered the legally cognizable result of the alleged misconduct of Coffey in fabricating evidence can be viewed as an inquiry either about whether the misconduct caused the ultimate liberty deprivation or about whether the misconduct is itself a denial of a constitutional right.[6]

---

6. Coffey contends that his alleged misconduct is neither a violation of Zahrey's constitutional rights nor the cause of such a violation. He argues "that nothing he did *before* presenting evidence to the grand jury violated Zahrey's rights or affected him in any way." Brief for Appellee at 26. But Zahrey contends that the fabrication did "affect him": it precipitated the sequence of events that resulted in the deprivation of his liberty. Coffey's contrary argument appears to regard his actions in using the false evidence at court hearings (grand jury and bail) as intervening acts that break the causal chain between his initial act of alleged fabrication of evidence and the deprivation of Zahrey's liberty that ultimately resulted. He argues, "Had Coffey, like the parole officer in *Scotto* [*v. Almenas,* 143 F.3d 105 (2d Cir.1998),] or police officers in other cases, simply fabricated evidence and then arrested Zahrey, he would have undoubtedly violated a clearly established constitutional right (the Fourth Amendment) and ab-

Analyzed either way, we still need to determine whether the deprivation of liberty may be considered a legally cognizable result of the initial misconduct.

In the context of criminal law enforcement, courts have differed as to the circumstances under which acts of subsequent participants in the legal system are superseding causes that avoid liability of an initial actor.[7] If the subsequent participant exercises independent judgment, the chain of causation has sometimes been held to have been broken. Thus, in *Townes v. City of New York,* 176 F.3d 138 (2d Cir.1999), we ruled that a trial judge's erroneous decision not to suppress unlawfully seized evidence was an exercise of independent judgment that avoided liability of the police officers who seized the evidence for the ensuing conviction and incarceration. *See id.* at 146–47. Police officers have also been insulated from liability for any deprivation of liberty resulting from their misconduct by the intervening acts of other participants in the criminal justice system. *See Barts v. Joyner,* 865 F.2d 1187, 1195 (11th Cir.1989) (prosecutor, grand jury, judge, and jury); *Hand v. Gary,* 838 F.2d 1420, 1427–28 (5th Cir.1988) (FBI agent, prosecutor, and grand jury); *Smiddy v. Varney,* 665 F.2d 261, 266–68 (9th Cir.1981) (prosecutor), *adhered to,* 803 F.2d 1469, 1471–72 (9th Cir.1986); *Duncan v. Nelson,* 466 F.2d 939, 943 (7th Cir.1972) (sentencing judge).

On the other hand, the Supreme Court has ruled that a judge's decision to issue an arrest warrant did not break the causal chain between the act of a police officer who submitted an affidavit and the arrest where "a reasonably well-trained officer in [the same] position would have known that his affidavit failed to establish probable cause." *Malley,* 475 U.S. at 345, 106 S.Ct. 1092. Applying *Malley,* we have ruled that the decision of a sentencing judge does not break the causal chain between the wrongful recommendation of a probation officer and an unconstitutional sentence. *See Warner v. Orange County Dep't of Probation,* 115 F.3d 1068, 1071 (2d Cir.1997), *reinstated after opinion vacated,* 173 F.3d 120, 121 (2d Cir.1999); *see also Wagenmann v. Adams,* 829 F.2d 196, 212–13 (1st Cir.1987) (decision of court clerk acting as bail commissioner in setting bail did not insulate police officer from liability for violating plaintiff's right to be free from excessive bail). We have also sustained a claim against a police officer, despite the subsequent actions of a prosecutor and a grand jury. *See White v. Frank,* 855 F.2d 956, 962 (2d Cir.1988) ("As with the grand jury, . . . the public prosecutor's role in a criminal prosecution will not necessarily shield a complaining witness from subsequent civil liability where the witness's testimony is knowingly and maliciously false.").

These differing results seem to place in tension the principle that the "intervening exercise of independent judgment" will break a causal chain, *Townes,* 176 F.3d at 147, and the principle that defendants in section 1983 cases are liable for consequences caused by "reasonably foreseeable intervening forces," *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 561 (1st Cir. 1989) (internal quotation marks omitted). Some courts have sought to resolve the tension by considering the intervening act of a decision-maker not to be an exercise of truly independent judgment, and therefore reasonably foreseeable, if caused by pressure or misleading information provided by the actor whom the plaintiff seeks to

solute immunity would not come into play because the arrest would not be *due* to a grand jury presentation and resulting indictment." Brief for Appellee at 25 n.* (emphasis added).

**7.** Tort law recognizes that a person whose initial act is the "but for" cause of some ultimate harm (*i.e.,* the harm would not have happened but for the initial act) is not legally liable for the harm if an intervening act is a "superseding cause" that breaks the legal chain of proximate cause. *See Restatement (Second) of Torts* § 440 (1965). Determination of whether an intervening act is such a superseding cause usually arises in the context of intervening acts committed by third parties. *See id.* §§ 444–45, 447–49.

hold liable. *See Townes,* 176 F.3d at 147 (intervening exercise of independent judgment breaks chain of causation "in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment"); *Robinson v. Maruffi,* 895 F.2d 649, 655–56 (10th Cir.1990); *Borunda v. Richmond,* 885 F.2d 1384, 1390 (9th Cir. 1989); *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988) ("[A] prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced that decision."); *Hand,* 838 F.2d at 1428; *Smiddy,* 665 F.2d at 266–67; *Dellums· v. Powell,* 566 F.2d 167, 192–93 (D.C.Cir.1977); *see also Barts,* 865 F.2d at 1197 (intervening acts break chain of causation "in the absence of a showing that the police officers deceived the court officials or unduly pressured them or that the court officials themselves acted with malice and the police joined with them"); *Lanier v. Sallas,* 777 F.2d 321, 325 (5th Cir.1985) (county court's order committing plaintiff to mental institution did not break chain of causation between doctors' false statements in their certificates of medical examination and the commitment, because the certificates' "falsity as to material facts ... caused [the judge] to issue the order"); *cf. Myers v. County of Orange,* 157 F.3d 66, 74 (2d Cir.1998) (since district attorney's office policy regarding cross-complaints had an impact on the district attorney's "ability to make an independent prosecutorial decision," his decision to prosecute did not break causal chain between that policy and the plaintiff's injuries). Even if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his mis-

conduct will contribute to an "independent" decision that results in a deprivation of liberty.[8]

■ However the causation issue is to be resolved in the law enforcement context in cases where an initial act of misconduct is followed by the act of a third person, our case involves the unusual circumstance that the same person took both the initial · act of alleged misconduct and the subsequent intervening· act. Coffey contends that a liberty interest was impaired by his *use* of the fabricated evidence, not by his alleged fabrication of it. *See* Brief for Appellee at 14. But it would be as artificial to focus only on the act of using the evidence, without regard to the consequences of such use, as it would be to focus on the earlier act of fabrication, without regard to the consequences of that act. The use of fabricated evidence, unaccompanied by such consequences, no more impairs liberty than does the initial fabrication of evidence, unaccompanied by such consequences. For example, in Zahrey's case, his liberty was not impaired until, after the evidence was both fabricated and used by introducing it in evidence before the grand jury, an indictment was later returned and Zahrey was later arrested. *See Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980) (characterizing arrest as "curtailment of a person's liberty"). The further significant impairment of his liberty did not occur until a judicial officer ultimately revoked his bail. Coffey does not contend that the events that followed use of the fabricated testimony at the grand jury (indictment, arrest, and bail revocation) are intervening acts that break the chain of causation that started with his immunized advocacy act of using the evidence at the grand jury. The question remains whether the liberty deprivations that occurred are legally traceable back even further to his earlier investigatory act of fabrication, for which he enjoys only qualified immunity.

---

8. The initial wrongdoer might avoid liability where the intervening decision-maker would have precipitated the deprivation of liberty, even in the absence of the antecedent misconduct; in that circumstance, "but for" causation could be claimed to be lacking.

Two decisions have squarely sustained a claim of liability where the same person initiated a liberty deprivation by misconduct and subsequently took a further step in the chain of causation in an immunized capacity. In *Thomas v. Sams*, 734 F.2d 185 (5th Cir.1984), the defendant was a city mayor who was also *ex officio* magistrate and municipal judge. In his capacity as mayor, he investigated a sewer pipe-cutting incident and signed a criminal complaint against the plaintiff; then, in his capacity as magistrate, he issued a warrant for the plaintiff's arrest. *See id.* at 188, 192. After the plaintiff was arrested, the defendant, in his capacity as magistrate, set bond. *See id.* at 188. The trial court found that the defendant "acted with personal animosity, malice, and a lack of good faith." *Id.* (internal quotation marks omitted).

The Fifth Circuit acknowledged that the defendant was absolutely immune for the "judicial acts" of issuing the warrant and setting bond. *Id.* at 189. The Court then considered the defendant's claim that his judicial acts were an "intervening cause" between his non-judicial acts of investigating and swearing out the criminal complaint, and the plaintiff's injury. *Id.* at 190. Although noting that a magistrate's issuance of a warrant generally breaks the chain of causation for an officer who acted with malice in procuring the warrant, *but see Malley*, 475 U.S. at 344–45 n. 7, 106 S.Ct. 1092, the Fifth Circuit rejected the proximate cause defense:

> [The defendant] did not choose to present the complaint to an impartial intermediary. He deliberately avoided doing so, despite the availability of state judges and justices of the peace who had authority to sign the warrant. Under these circumstances the issuance of the

arrest warrant was not an intervening cause: There was no "independent decision" to break the causal chain and to insulate him as the initiating party. [Defendant] acted with "personal animosity, malice, and a lack of good faith" in undertaking the acts that enabled him to take up his magistrate's pen and sign the warrant. He may not innoculate his conduct by that pen-stroke.

*Thomas*, 734 F.2d at 191 (footnote omitted). The defendant's non-judicial acts "caused the deprivation of [the plaintiff's] liberty." *Id.* at 191 n. 14.

In *White*, we also recognized the point that a subsequent immunized act of a single official does not break the chain of causation traceable to his initial misconduct occurring in another capacity. That case concerned a police officer who was entitled to absolute immunity as an ordinary witness but lacked immunity for initiating a prosecution by providing false testimony as a complaining witness. "[T]he fact that [the officer's] testimony at a judicial proceeding may have been the means by which he initiated the prosecution does not permit him to transpose the immunity available for defamation as a defense to malicious prosecution." [9] *White*, 855 F.2d at 961.

Coffey acknowledged at oral argument that if he had fabricated evidence and handed it to another prosecutor who unwittingly used it to precipitate Zahrey's loss of liberty, Coffey would be liable for the initial act of fabrication. It would be a perverse doctrine of tort and constitutional law that would hold liable the fabricator of evidence who hands it to an unsuspecting prosecutor but exonerate the wrongdoer who enlists himself in a scheme to deprive a person of liberty.[10] If, as alleged, Coffey fabricated evidence in his investigative

---

**9.** Coffey acknowledges that in disputing that his alleged fabrication of evidence renders him liable for the resulting deprivation of Zahrey's liberty, he "does not contend that his alleged wrongdoing should be retroactively immunized because he later presented evidence to the grand jury." Brief for Appellee at 26.

**10.** Deeming the chain of proximate causation broken by the prosecutor's use of evidence he himself fabricated would also, in practical effect, enlarge the scope of the prosecutor's absolute immunity. Although a police officer and a prosecutor are entitled only to the same qualified immunity for investigatory acts, *see Buckley III*, 509 U.S. at 273, 113 S.Ct. 2606, a

role, it was at least reasonably foreseeable that in his advocacy role he would later use that evidence before the grand jury, with the likely result that Zahrey would be indicted and arrested. The complaint adequately alleges that the deprivation of Zahrey's liberty was the legally cognizable result of Coffey's alleged misconduct in fabricating evidence.[11]

We recognize that this conclusion is in tension, if not conflict, with the majority opinion by Judge Easterbrook for the Seventh Circuit in *Buckley IV*, on remand from the Supreme Court; *see also Rhodes v. Smithers*, 939 F.Supp. 1256, 1270 (S.D.W.Va.1995) (following the reasoning of *Buckley IV*), *aff'd*, 91 F.3d 132 (4th Cir.1996) (table). In *Buckley IV*, which had facts similar to those alleged here, Judge Easterbrook concluded that the plaintiff had failed to state a claim, even though he "unquestionably suffered a loss of liberty when he was arrested and imprisoned pending trial." 20 F.3d at 797. He reasoned that a prosecutor violates no constitutional right of a defendant by unlawfully *obtaining* testimony from a potential trial witness that is known to be false. *See id.* at 795–96. He acknowledged that

a prosecutor *using* such false testimony at trial could violate the defendant's constitutional rights, but noted that for this act the prosecutor enjoyed absolute immunity. *See id.* We agree with Judge Easterbrook (just as we agree with Judge Preska in the pending case) that the investigatory act of obtaining evidence known to be false is not itself a violation of a constitutional right. But we disagree with the further point that no valid section 1983 claim is stated where a deprivation of liberty *results* from the initial act of obtaining evidence known to be false, at least in a case like *Buckley* and the pending case where the same person who fabricated the evidence foreseeably used it.

We cannot be certain whether the Seventh Circuit rejected Buckley's claim on the ground that the prosecutor's investigatory misconduct did not violate any constitutional right or on the legally distinct ground that the prosecutor's investigatory misconduct was not the legally cognizable cause of the plaintiff's ultimate deprivation of liberty. Several statements in the three Seventh Circuit opinions in the *Buckley* litigation emphasize the issue of causation.[12] The rationale for the Seventh Cir-

police officer who fabricated evidence and forwarded that evidence to a prosecutor (who used it against a defendant) would remain liable for the consequences of his misconduct, *see, e.g., Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir.1997); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997); *Jones*, 856 F.2d at 993–94, while a prosecutor who fabricated evidence and used it *himself* would not. Though such a holding would exonerate the prosecutor for his fabrication because causation was lacking, it would have the effect of "relating back" a prosecutor's absolute immunity for acts committed as an advocate to a stage of the proceeding when, according to the Supreme Court in *Buckley III*, a prosecutor enjoys only qualified immunity. *Cf. Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir.1999) (agreeing that "absolute testimonial immunity does not relate backwards to protect a defendant for any activities he allegedly engaged in prior to taking the witness stand") (internal quotation marks and brackets omitted).

**11.** It is arguable that, in holding that a prosecutor may be sued for fabricating evidence

during the investigatory phase of a criminal case when the fabricated evidence results in the deprivation of the accused's liberty, we are exposing prosecutors to litigation by many of those acquitted of crimes. Whether or not this fear is valid, we believe it is relevant only to the issue of whether a prosecutor should be entitled to absolute immunity for investigatory acts, and not to the legally distinct, and arguably more straightforward, issue of whether a prosecutor's misconduct may result in the deprivation of a criminal defendant's constitutional right. Thus, to the extent that prosecutors might face litigation from acquitted defendants, that consequence inevitably results from the Supreme Court's decision in *Buckley III* that prosecutors enjoy only qualified immunity for investigatory acts, not from our decision today. Moreover, a claim of fabrication of evidence, like all pleadings, remains subject to the standards of Fed.R.Civ.P. 11.

**12.** In the first *Buckley* decision, the Seventh Circuit ruled that a prosecutor should have absolute immunity for any claim of a deprivation of liberty alleged to result from misconduct where the deprivation cannot occur until

cuit's final decision in *Buckley IV* appears to be squarely grounded on the theory that the prosecutor's alleged misconduct in fabricating evidence was not the cause of a liberty deprivation. Discussing a prior decision in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir.1988), which had sustained a claim against a police officer who misled a prosecutor by presenting false evidence, Judge Easterbrook wrote:

> Things would be different [*i.e.*, no cause of action], we implied [in *Jones* ], . . . if the prosecutors them selves had concocted the evidence, for then the immunized prosecutorial decisions [to use the evidence] would be the *cause* of the injury.

*Buckley IV*, 20 F.3d at 797 (emphasis added). Judge Fairchild dissented on this point. *See id.* at 800 ("Prosecutors are not immune from § 1983 liability for their non-advocacy wrongful conduct if [the plaintiff] can prove that indictment and trial would not have occurred in the absence of the product of the wrongful conduct."). We do not see the implication in *Jones* that Judge Easterbrook observes, and, even if it were evident, we would follow the contrary decisions of the Fifth Circuit in *Thomas* and our own decision in *White*, and would consider Judge Fairchild's dissent in *Buckley IV* persuasive.

### III. A Clearly Established Constitutional Right

■ Having identified with sufficient particularity the right claimed to be violated, we next consider whether that right was clearly established in 1996 when Coffey's alleged misconduct occurred. It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer. *See Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir.1998) (parole officer); *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir.1997) (police officers); *White*, 855 F.2d at 961 (same). As we recently stated, citing ample pre–1996 authority, "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial. . . ." *Ricciuti*, 124 F.3d at 130; *see also Malley*, 475 U.S. at 346 n. 9, 106 S.Ct. 1092 (arrest unconstitutional if police officer obtained warrant from judicial officer on the basis of evidence that "no officer of reasonable competence" would have considered sufficient).

■ It has also long been established that a prosecutor who knowingly uses false evidence at trial to obtain a conviction acts unconstitutionally. *See Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Pyle v. Kansas*, 317 U.S. 213, 216, 63 S.Ct. 177, 87 L.Ed. 214 (1942); *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935). Although a prosecutor is protected by absolute immunity for his actions in presenting evidence *at trial, see Imbler*, 424 U.S. at 431, 96

---

after a court has an opportunity to intervene. *See Buckley I*, 919 F.2d at 1240–42. Judge Easterbrook reasoned that "[p]rosecutors whose out-of-court acts *cause* injury only to the extent a case proceeds will be brought to heel adequately by the court." *Id.* at 1242 (emphasis added). In *Buckley II*, after a remand for reconsideration in light of *Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the Seventh Circuit reiterated its view of absolute immunity for a prosecutor's acts remediable by a court, again reasoning that causation was lacking: " 'If there would be no loss but for the judge's acts [in failing to remedy the prosecutor's misconduct], then the prosecutor . . . who induces the judge to act has absolute immunity. . . .' "

*Buckley II*, 952 F.2d at 967 (quoting *Millspaugh v. Wabash County Dep't of Public Welfare*, 937 F.2d 1172, 1175 (7th Cir.1991)). After the Supreme Court ruled in *Buckley III* that the prosecutor enjoyed only qualified immunity for acts performed in an investigatory capacity, Judge Easterbrook dismissed Buckley's claim on the ground that the prosecutor's misconduct in obtaining evidence was not the cause of the ultimate deprivation of liberty. He reasoned, "[E]vents not themselves supporting recovery under § 1983 do not become actionable because they *lead to* injurious acts for which the defendants possess absolute immunity." *Buckley IV*, 20 F.3d at 796 (emphasis added).

S.Ct. 984, these cases serve to inform every prosecutor that his knowing use of false evidence is unconstitutional. Any prosecutor aware of these cases would understand that fabricating evidence in his investigative role violates the standards of due process and that a resulting loss of liberty is a denial of a constitutional right.

Although no prior decision has found a violation *by an investigating prosecutor* of the right not to be deprived of liberty on the basis of fabricated evidence, the cases in which such claims have been made reveal some support for Zahrey's position. The Supreme Court in *Buckley III* considered a claim that a prosecutor in his investigative role fabricated evidence. A narrow 5–4 majority ruled that the alleged misconduct had occurred at the investigative stage, but the Court did not decide whether a constitutional right had been violated. Instead, the Court assumed that the complaint "allege[d] constitutional violations for which § 1983 provides a remedy." *Buckley III*, 509 U.S. at 261, 113 S.Ct. 2606. In a concurring opinion, however, Justice Scalia foreshadowed Zahrey's claim when he observed: "I am aware of[ ] no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial *or otherwise harms him*, violates the Constitution." *Id.* at 281, 113 S.Ct. 2606 (emphasis added). Unlike a claim to be free of "the mere preparation of false evidence," Zahrey's contention is that he has been "otherwise harm[ed]" by such misconduct. Though it may be a rare claim that the official who fabricated evidence in an investigatory role is the same person who later presented it to a grand jury in an advocacy role, the unusual facts of Zahrey's claim do not remove it from the broader category of claims that have long been recognized as alleging violations of clearly established constitutional rights.

The opinion of the four Justices who concurred only in part in *Buckley III* also lends some support to Zahrey's claim. They disagreed with the majority that the prosecutor's misconduct occurred in his investigative role, *see id.* at 282–91, 113 S.Ct. 2606 (Kennedy, J., with whom Rehnquist, C.J., White and Souter, JJ., join, concurring in part and dissenting in part), and they faulted the majority for appearing to draw the line between investigation and advocacy at the point where probable cause is established, *see id.* at 286–90, 113 S.Ct. 2606. In expressing their disagreement on this point, however, they explicitly referred to a prosecutor who fabricates evidence that leads to an arrest, insisting that such misconduct should not be shielded by absolute immunity. *See id.* at 287–88, 113 S.Ct. 2606 ("[W]hen a civil plaintiff claims that a prosecutor falsified evidence ..., it is difficult to fathom why securing such a fraudulent determination [of probable cause] transmogrifies unprotected conduct into protected conduct."). Whether or not the majority in *Buckley III* would regard this example given by the four partial concurrers as an instance of misconduct occurring at the investigating stage, Coffey concedes, for purposes of this appeal, that our case involves misconduct at that stage. The Justices who joined Justice Kennedy's opinion apparently recognize that a constitutional right is violated when a prosecutor, in an investigative role, fabricates evidence that results in a deprivation of liberty, and nothing in the majority opinion disputes that proposition.

Our Court has also considered a claim that a prosecutor fabricated evidence in an investigative capacity. *See Hill*, 45 F.3d at 662–63. Although we ruled that further exploration of the facts was required to determine whether the alleged fabrication occurred at the investigative or the advocacy stage, *see id.* at 663, our decision appears to be premised on the existence of a right not to be deprived of liberty resulting from a prosecutor's investigative fabrication of evidence.

▮▮▮ It is true that no court decided before 1996 that a prosecutor deprives a criminal defendant of liberty without due process of law by fabricating evidence in an investigative role under circumstances

where it is reasonably foreseeable that the false evidence will be used to deprive the defendant of liberty. Moreover, as the District Court in this case noted, by 1996 two courts appear to have reached a contrary conclusion. *See Buckley IV,* 20 F.3d at 794–95; *Rhodes,* 939 F.Supp. at 1270. *Anderson* instructs, however, that for a right to be clearly established for purposes of a qualified immunity defense, the precise conduct at issue need not previously have been ruled unlawful. *See* 483 U.S. at 640, 107 S.Ct. 3034. We think the right at issue in this case should not be defined at such a level of particularity as to be limited to a right not to be deprived of liberty as a result of *an investigating prosecutor's* fabrication of evidence. The right is appropriately identified as the right not to be deprived of liberty as a result of *any government officer's* fabrication of evidence. That right was clearly established in 1996, when Coffey's alleged acts occurred, and it was also then well established that for purposes of actions under section 1983 and *Bivens,* a person is "responsible for the natural consequences of his actions," *Monroe,* 365 U.S. at 187, 81 S.Ct. 473. Since a jury could find that Coffey would foresee that he himself would use the fabricated evidence and that a deprivation of Zahrey's liberty would result, Zahrey's claim survives Coffey's attempt to have the claim dismissed, as a matter of law, because of a qualified immunity defense.

## Conclusion

For all of these reasons, we conclude, on the assumption that Coffey was acting in an investigative capacity, that Zahrey's complaint does not encounter a qualified immunity defense that must, as a matter of law, be upheld, and that the complaint adequately pleads the elements of a constitutional tort. We therefore reverse the

District Court's judgment as to Coffey and remand for further proceedings.[13]

13. On remand, as we noted above, Coffey may contend that all of his actions were sufficiently within an advocacy role to entitle him

to absolute immunity. We intimate no views on that issue.