DENNY CHIN, Circuit Judge.
I respectfully concur in part and dissent in part. I believe the district court correctly held that plaintiff-appellant Marcos Poventud’s claims were based on factual allegations that are inconsistent with his 2006 conviction for attempted robbery. I agree, however, that the judgment should be vacated and the ease remanded for further proceedings to the extent that Poventud’s claims do not imply the invalidity of his 2006 conviction.
I
The question presented is whether Poventud’s claims under Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), are barred by the Supreme Court’s decision in Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 *148 L.Ed.2d 383 (1994). Heck requires the district court to consider:
[WJhether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiffs action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.
512 U.S. at 487, 114 S.Ct. 2364 (footnotes omitted). The en banc majority concludes that Heck does not bar Poventud’s claims. I disagree, in part.
The Second Amended Complaint (the “Complaint”) asserts only one cause of action against the individual defendants, for denial of due process and a fair trial. (Compl.¶¶ 115-25) (Dkt. No. 52). That one cause of action, however, is based on several factual claims, including Poventud’s contentions that the police failed to disclose that the victim (Younis Duopo) identified Poventud’s brother (Francisco) and thereafter covered up and lied about this evidence.
But there are other factual claims in the Complaint as well. The Complaint alleges, at least implicitly, that one of the detectives planted Francisco’s wallet in the backseat of the livery cab. (Id. ¶¶ 13-17, 36-38). It alleges that after Duopo incorrectly identified Francisco, the detectives targeted Poventud and manipulated Duopo into falsely identifying Poventud. (Id. ¶¶ 22-33, 45-46). It asserts that three other men, one of whom resembled the description of the shooter provided by Duopo, were arrested approximately two weeks later in the same general vicinity for robbing a livery cab with the same weapon that had been used to shoot Duopo. (Id. ¶¶ 42-44). It alleges, at least implicitly, that Poventud was not at the scene of the robbery because he was at a neighbor’s apartment playing video games when the crime occurred. (Id. ¶ 40).
All of these factual claims paint a picture of innocence, and thus they necessarily imply the invalidity of Poventud’s 2006 conviction. Indeed, the Complaint characterizes the purportedly exculpatory evidence as “evidence of innocence” (id. ¶ 128), and Poventud argued, in his opposition to defendants’ summary judgment motion below, that he “is innocent.” (PL’s Mem. in Opp’n to Mot. for Summ. J., at 1 (Dkt. No. 68) (emphasis in original); see also id. (plaintiff “could continue to maintain his innocence ... [o]r, he could admit a crime he had not committed and be released — immediately ”) (emphasis in original)).[1]
Poventud is not, however, innocent, as his 2006 conviction makes clear. He pled guilty to attempted robbery in the third degree, and admitted to a state court judge that he was present at the place and time of the robbery and that he attempted to steal personal property from another person by using force, i.e., a weapon. Hence, the wallet was not planted, Duopo correctly identified Poventud, and Poventud was not at a neighbor’s apartment playing video games.
The district court, of course, decided the case that was before it, and it recognized *149 that Poventud’s claims were centered on his claim of innocence. It concluded— correctly, in my view — that Poventud’s factual assertions called into question the validity of his 2006 conviction. See Poventud v. City of New York, No. 07-civ-3998(DAB), 2012 WL 727802, at *3 (S.D.N.Y. Mar. 6, 2012). Hence, I do not believe that the district court erred, as the en bane majority suggests, in measuring Poventud’s admissions in his guilty plea against the factual assertions of his Brady claim. (See Maj. Op., ante, at 134).
The en banc majority observes that “Brady does not require actual innocence, and even ‘ “[a] guilty man is entitled to a fair trial.” ’ ” (Maj. Op., ante, at 137 (quoting People v. Buchalter, 289 N.Y. 181, 225, 45 N.E.2d 225 (1942) (Lehman, Chief Judge, concurring))). I do not disagree. Moreover, I agree that Poventud was entitled to the disclosure of exculpatory evidence, regardless of whether he was guilty or innocent. He was entitled to know that Duopo had identified Francisco, even though Francisco was undeniably the wrong man. I have trouble, however, with the notion that Poventud can ask a jury for damages now based on the argument that he had the right to try to persuade the jury in 1998 that he was not present— when he admitted in his guilty plea that he was present and participated in the robbery. Indeed, I do not accept the proposition that Poventud should be able to argue to a jury now that had he known about Duopo’s misidentification of Francisco in 1998, he would have been able to persuade the jury then that he was not present at the robbery — when he was in fact there.
Accordingly, I believe the district court correctly held that Poventud’s claims, to the extent discussed above, call into question the validity of his 2006 conviction.
II
I agree with the majority that there are claims in the case that Poventud may pursue that do not call into question the validity of his 2006 conviction. Where a conviction is set aside because of a Brady violation, a subsequent guilty plea will not necessarily foreclose all claims for damages, for there may be claims that do not impugn the integrity of the guilty plea.[2] One could imagine such a situation, for example, where police officers withheld exculpatory information about the presence of a weapon at the scene in a burglary case. If the defendant is convicted of burglary in the second degree and later discovers that the police failed to disclose exculpatory evidence about the presence of the weapon, the defendant could still pursue a § 1983 claim based on the Brady violation even if the conviction is vacated and he subsequently pleads guilty to burglary in the third degree. Such a claim would not call into question the validity of the guilty plea, as the defendant could *150 argue that the weapon was not his and that he was injured by the Brady violation as he was convicted of the more serious offense of burglary in the second degree.
Although Poventud’s 2006 conviction forecloses arguments as to his innocence or his presence at the scene of the crime, he may still show that defendants’ alleged actions caused him harm, as he asserts a number of claims that do not call into question the validity of his guilty plea. The Complaint alleges, for example, that defendants “knew that Duopo’s misidentification of Francisco Poventud was highly relevant to the Bronx District Attorney’s evaluation of the strength of the evidence against [him]” and “to the court’s decision whether to grant reasonable bail.” (Compl. ¶ 47; see also id. ¶ 53 (“the court was misled concerning the strength of the case against Plaintiff and set prohibitively high bail of $100,000, causing Plaintiff to be incarcerated until trial”)). Poventud may be able to prove that had the Brady evidence been disclosed, his bail would have been set at a lower amount, he would have been able to make bail, and he would not have been imprisoned for the full nine years before pleading guilty to a lower level felony.
Furthermore, Poventud alleges that at least one of the defendants (Umlauft) continued to lie to and mislead prosecutors by denying that any undisclosed identification had occurred. (Id. ¶¶ 2, 117, 120). Poventud had a “right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigatory capacity.” Zahrey v. Coffey, 221 F.3d 342, 344 (2d Cir.2000). The Complaint contends that after Poventud filed his motion to vacate his conviction based on the Brady violation, Umlauft lied to the new prosecutor (Shockett), stating he had indeed disclosed the misidentification to both the original prosecutor (Turkin) and defense attorneys at the time of trial. (Compl.¶¶ 103-06). Poventud . also contends that Turkin informed Shockett that Umlauft never disclosed the Brady material, but Shockett did not share Turkin’s account with the defense. (Appellant En Banc Br., at 18-19). Accordingly, the State opposed Poventud’s motion by submitting Umlauft’s false affidavit and relied on Umlauft’s false testimony at an evidentiary hearing. (Compl.¶¶ 107-10). Moreover, Poventud argues that, based on Umlauft’s continued lies, the State filed a notice of appeal of the trial court’s finding that a Brady violation occurred at Poventud’s first trial and successfully opposed Poventud’s bail motion. (Appellant En Banc. Br., at 15-16). These are claims that Poventud could at least arguably pursue without impugning the integrity of his guilty plea.
Ill
In sum, while I believe that the district court correctly held that Poventud’s 2006 conviction forecloses any claims asserting that he was innocent or that he was not present at the scene of the crime, I agree that the Complaint sets forth claims that Poventud may pursue without necessarily impugning the validity of his guilty plea. These claims, in my view, are not foreclosed by Heck.

. On appeal, while Poventud argues that his claims are not dependent on his innocence (see Appellant En Banc Br., at 24 (“he does not, for the purpose of his claim, assert, or need to establish, that he is innocent”)), he has continued to argue that he is in fact innocent (see, e.g., id., at 5 ("Poventud had sworn his innocence for nine years.”)).

. To establish a Brady violation, a claimant must show that “[t]he evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching; [the] evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.” DiSimone v. Phillips, 461 F.3d 181, 192 (2d Cir.2006) (quoting Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). To establish prejudice a plaintiff must show materiality. As the Supreme Court has explained, the "touchstone of materiality is a 'reasonable probability’ of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.” Kyles v. Whitley, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).