In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3539

MICHAEL J. ALEXANDER,

*Plaintiff-Appellant,*

*v.*

MARK MCKINNEY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:10-cv-914—**Richard L. Young**, *Chief Judge.*

ARGUED MAY 31, 2012—DECIDED AUGUST 8, 2012

Before MANION, KANNE, and WILLIAMS, *Circuit Judges.*

KANNE, *Circuit Judge.* Michael Alexander alleges that a local prosecutor, Mark McKinney, conspired with a number of agents from the Federal Bureau of Investigation to manufacture false evidence and bring trumped-up charges of conspiracy to commit bribery against him. A jury acquitted Alexander of the charges, and he then brought suit against McKinney for violating his due process rights. The district court dismissed the claim, finding McKinney entitled to qualified immunity

because the complaint did not identify a deprivation of a cognizable constitutional right. Because Alexander's complaint is merely an attempt to recast an untimely false arrest claim into a due process claim, an approach we have plainly rejected, we affirm.

## I. BACKGROUND

The complaint alleges the following facts, which we take as true for purposes of reviewing the district court's grant of McKinney's motion to dismiss. *See R.C. Wegman Constr. Co. v. Admiral Ins. Co.*, 629 F.3d 724, 726 (7th Cir. 2011). Alexander is a criminal defense attorney who was frequently critical of McKinney, a deputy prosecutor in Delaware County, Indiana. The two butted heads for a number of years over McKinney's handling of drug forfeitures in cases involving local law enforcement's drug task force. In January 2007, McKinney was elected prosecutor for the district, and upon taking office he began searching for a way to use his increased power and influence to punish his outspoken critic.

Around this same time, FBI agents began investigating one of Alexander's colleagues, Jeff Hinds, for possible involvement in a bribery scheme. The FBI agents also briefly investigated Alexander in 2006 to ascertain whether he too was involved in the scheme, but they abandoned that effort after Alexander denied any involvement. At some point, McKinney began meeting with the FBI agents, in the hopes of working together to bring false charges against Alexander. McKinney and

the agents presumably struck some sort of deal, and together they agreed to renew the investigation into Alexander's involvement in the bribery scheme, the agents' previous belief that he was not involved notwithstanding. In February 2007, they succeeded in building a case against Alexander, but only by gathering false and otherwise misleading evidence. In addition to fabricating other unspecified evidence, Alexander alleges that the FBI agents had individuals set up meetings with him in an attempt to elicit incriminating statements. The individuals would wear a wire during the meetings, and the FBI agents would later alter the digital recordings obtained to exclude exculpatory segments from the recordings.

In February 2007, a special prosecutor, James Luttrell, was appointed to prosecute the case. Luttrell was unaware that he had been given false or altered evidence, and accordingly charged Alexander with conspiracy to commit bribery on February 28, 2008. A jury ultimately acquitted Alexander of the charges on March 13, 2009. On July 9, 2010, Alexander brought suit against McKinney and the FBI agents in state court, alleging broad claims under 42 U.S.C. § 1983 that McKinney and the agents conspired to violate his Fourth, Fifth, Eighth, and Fourteenth Amendment rights by manufacturing false evidence and withholding exculpatory evidence, resulting in his arrest and the ensuing criminal trial. The case was subsequently removed to federal court.

McKinney filed a motion to dismiss Alexander's second amended complaint, which the district court

granted on April 12, 2011. In ruling on this motion, the court first determined that McKinney was not entitled to absolute immunity based on his role as prosecutor because, at the time Alexander alleged that McKinney conspired to manufacture false evidence against him, McKinney was performing investigatory functions. *See Lewis v. Mills*, 677 F.3d 324, 330 (7th Cir. 2012) ("[P]rosecutors are *not* entitled to absolute immunity when performing 'acts of investigation or administration.'") (*quoting Buckley v. Fitzsimmons*, 509 U.S. 259, 270 (1993)). Nevertheless, the district court found that McKinney was entitled to qualified immunity because Alexander did not allege that he was deprived of a cognizable constitutional right. The only constitutional right that Alexander identified, his "due process rights to not be deprived of his liberty premised upon manufactured false evidence," was insufficient to state a claim under our circuit's case law. Alexander filed this timely appeal.

## II. ANALYSIS

We review the district court's grant of a motion to dismiss for failure to state a claim *de novo*. *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). On appeal, Alexander argues that the district court erred in finding that McKinney was entitled to qualified immunity because his complaint adequately alleged a deprivation of a constitutional right, namely that the manufacturing of false evidence resulting in his arrest and charges being brought against him deprived him

of liberty in violation of his substantive due process rights.[1] For the following reasons, we disagree.

"Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 879 (7th Cir. 2012). Claims of qualified immunity involve two questions: (1) whether the official's conduct violated a constitutional right, and (2) whether the right was clearly established at the time. *Surita v. Hyde*, 665 F.3d 860, 868 (7th Cir. 2011). We may consider these questions in any order, *Reher v. Vivo*, 656 F.3d 772, 775 (7th Cir. 2011), and a negative answer to either question entitles the official to the defense, *Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009).

Before analyzing whether Alexander's complaint alleges a deprivation of a cognizable constitutional right, we think it helpful to highlight the claims he is *not* bringing. First, although the crux of his complaint alleges that—in light of the withheld and altered evidence—he was arrested without probable cause, Alexander does not bring a Fourth Amendment false arrest claim because such a claim would be untimely. In Indiana, there is a two-year statute of limitations for false arrest claims under § 1983, accruing from the date of arrest. *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896 (7th Cir. 2001). Alexander

---

[1] Because McKinney concedes in his reply brief that he was not entitled to absolute immunity, we do not address the issue.

was arrested on February 28, 2008, but did not file suit until July 9, 2010—well after the statute of limitations expired. At oral argument, Alexander's counsel acknowledged that the claim was not brought earlier for strategic reasons: McKinney was still the prosecutor, and "[N]obody was going to go back into that snake pit, file this against the sitting prosecutor after [Alexander] had already been acquitted."

Nor did Alexander bring a claim for malicious prosecution under Indiana state law. *See Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 462 (7th Cir. 2009) ("Under Indiana law, 'the elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor.'") (brackets omitted) (*quoting Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005)); *see also* 19 Indiana Law Encyclopedia *Malicious Prosecution* § 1 (2012). Although Indiana provides a state law claim for malicious prosecution, the state grants broad immunity to governmental employees from the claim. *See* Ind. Code § 34-13-3-3 (stating that a governmental employee acting within the scope of employment is not liable for losses resulting from "[t]he initiation of a judicial or an administrative proceeding"); *see also Butt v. McEvoy*, 669 N.E.2d 1015, 1018 (Ind. Ct. App. 1996) (construing predecessor statute with identical language to find police officer accused of knowingly providing false information immune from malicious prosecution claim).

Therefore, a state law claim for malicious prosecution likely had little chance of success.

Finally, although he alleges that exculpatory evidence was withheld at trial, Alexander does not claim that he was denied the right to a fair trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In order to bring a *Brady* claim, a plaintiff must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material, that is, there was a reasonable probability that prejudice ensued. *Parish v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009). The jury acquitted Alexander of the charges, and we have expressed doubt that an acquitted defendant can ever establish the requisite prejudice for a *Brady* claim. *See Bielanski v. Cnty. of Kane*, 550 F.3d 632, 644 (7th Cir. 2008). Nevertheless, we have entertained the possibility that prejudice could be established if an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial. *See Parish*, 594 F.3d at 554; *Bielanski*, 550 F.3d at 644-45. Alexander expressly disavowed that he was bringing a *Brady* claim in his brief in opposition to the defendants' motion to dismiss, and thus we need not decide whether such a claim was available.

This leaves Alexander to attempt to piece together an amorphous substantive due process claim from the remains of his forgone or otherwise unavailable constitutional and state law claims. That is an approach we have squarely rejected in analogous cases, and we

see no reason to depart from our precedent. *See Brooks v. City of Chicago*, 564 F.3d 830, 833 (7th Cir. 2009) (plaintiff alleging that police officers failed to disclose exculpatory evidence, perjured themselves, and submitted false police reports could not state a due process claim "by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.") (*quoting McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003)).

In support of his argument that he states a cognizable due process right, Alexander relies heavily on the Second Circuit's decision in *Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000). The plaintiff in *Zahrey* alleged that police officers and prosecutors conspired to manufacture false evidence to bring conspiracy to commit robbery charges against him. *Id.* at 345-46. He was arrested and held without bail for eight months, before ultimately being acquitted of the charges. *Id.* at 348. The Second Circuit held that Zahrey stated a due process claim, finding he had "the right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." *Id.* at 349. More recently, we held that a prosecutor acting in an investigatory capacity who fabricates evidence that is used to obtain a wrongful criminal conviction violates a convicted defendant's clearly established due process rights. *Whitlock v. Brueggemann*, 682 F.3d 567, 585-86 (7th Cir. 2012). There, the plaintiffs, Whitlock and Steidl, alleged that police officers and prosecutors used

fabricated evidence, such as pressuring witnesses to concoct stories of having witnessed the crime, to convict the two of a high-profile double homicide. *Id.* at 572-73. Whitlock and Steidl spent the next seventeen and twenty-one years in prison, respectively, before having their convictions overturned in post-conviction proceedings on the basis of numerous *Brady* violations. *Id.* at 570. In both *Zahrey* and *Whitlock*, the alleged liberty deprivation came not from the initial arrest, but from the time spent in confinement *after* arrest—the eight months Zahrey spent in jail after having his bail revoked and the numerous years Whitlock and Steidl spent in prison after being wrongfully convicted. *See Zahrey*, 221 F.3d at 348; *Whitlock*, 682 F.3d at 585. *Zahrey* and *Whitlock* are inapposite because the only liberty deprivation Alexander alleges stems from his initial arrest—he was released on bond that same day.[2]

---

[2] Nor does the burden of appearing in court and attending trial, in and of itself, constitute a deprivation of liberty. *Cf. Bielanski*, 550 F.3d at 639-42 (collecting cases and holding that summons to appear in court, order not to leave the state without permission, and required interview with probation officer do not rise to level of Fourth Amendment seizure); *see also Harrington v. City of Nashua*, 610 F.3d 24, 32-33 (1st Cir. 2010) ("run-of-the-mill" conditions of pretrial release, including required attendance in court proceedings, do not constitute Fourth Amendment seizure); *Burg v. Gosselin*, 591 F.3d 95, 101 (2d Cir. 2010) (pre-arraignment summons requiring later court appearance does not constitute Fourth Amendment seizure). It would be anomalous to hold that

(continued...)

The Fourth Amendment, not the due process clause, is the proper basis for challenging the lawfulness of an arrest. *See Albright v. Oliver*, 510 U.S. 266, 275 (1994) (plurality opinion). Moreover, the Supreme Court has made it clear that a substantive due process claim may not be maintained where a specific constitutional provision protects the right at issue. *NASA v. Nelson*, 131 S. Ct. 746, 765 (2011), (Scalia, J., concurring in judgment) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (brackets omitted) (*quoting Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998)). Alexander cannot recast his untimely Fourth Amendment claim, thereby circumventing the statute of limitations, by combining it with a state law malicious prosecution claim and simply changing the label of the claim to substantive due process.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of McKinney's motion to dismiss the complaint.

---

[2] (...continued)
attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to *effectuate* due process.

---