In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1570

OMAR SAUNDERS-EL,

*Plaintiff-Appellant,*

*v.*

ERIC ROHDE, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 10 C 50063 — **Frederick J. Kapala**, *Judge.*

ARGUED DECEMBER 5, 2014 — DECIDED JANUARY 30, 2015

Before FLAUM, EASTERBROOK, and KANNE, *Circuit Judges.*

FLAUM, *Circuit Judge.* Subsequent to his acquittal by a jury on burglary charges, Omar Saunders-El sued members of the Rockford, Illinois police department, alleging that they planted his blood at the crime scene in an attempt to frame him. His complaint included a 42 U.S.C. § 1983 claim—contending that by fabricating evidence, the officers offended his due process rights—and Illinois

state law claims for malicious prosecution and intention-al infliction of emotional distress. The district court granted summary judgment for the officers on the federal claim and dismissed the state law claims without preju-dice to refiling in state court. In the district court's view, fabricating evidence does not violate a defendant's due process rights and cannot support a § 1983 action; such an allegation must instead be brought as a state law claim for malicious prosecution, the district court reasoned. That holding is mistaken. A criminal defendant's due process rights may be violated—actionable by way of 42 U.S.C. § 1983—when the evidence against him is fabri-cated. However, due process is not implicated when, as here, the defendant is released on bond following his ar-rest and acquitted at trial. And this rule cannot be cir-cumvented, as Saunders-El attempts to do, simply by re-framing such an allegation as a *Brady* claim—that is, by alleging that the police officers who supposedly fabricat-ed the evidence failed to reveal their misconduct to the prosecution. Accordingly, we affirm the judgment of the district court, but on other grounds.

## I. Background

Omar Saunders-El was arrested, released on bond, charged, and ultimately stood trial for a burglary that oc-curred on August 10, 2006 at the Sports Dome retail store in Rockford, Illinois. Rockford police officers claimed that they spotted Saunders-El on the store's roof, ob-served him jump off the building, and apprehended him following a foot chase. According to the prosecution, Saunders-El broke into the Sports Dome by carving a hole in the roof and ceiling and, in the process, cut him-

self on jagged metal, leaving his blood at the scene.[1]
Saunders-El, however, insists that he was minding his
own business that evening, when a Rockford police of-
ficer stopped him on the street to question him about the
break-in. While they spoke, Saunders-El says, another
officer bludgeoned him over the head, splitting open his
skull and knocking him out. While unconscious, he be-
lieves, the officers collected his blood in order to smear it
at the crime scene and frame him for the burglary. De-
spite the ostensible strength of the evidence against him,
a jury acquitted Saunders-El. He then sued various Rock-
ford police officers based on his allegations of evidence
fabrication, asserting a due process claim by way of 42
U.S.C. § 1983, as well as Illinois state claims of malicious
prosecution and intentional infliction of emotional dis-
tress.

With respect to the § 1983 claim, the district court
granted summary judgment in the officers' favor, holding
that an allegation of evidence fabrication cannot support
a constitutional tort claim and is only redressable in Illi-
nois as a state law claim for malicious prosecution. The
district court relinquished jurisdiction over the state law
claims and dismissed them without prejudice to refiling
in state court. On appeal, Saunders-El focuses the bulk of
his attention on the issue of whether a district court
properly may find in favor of defendants at summary
judgment on the ground that a plaintiff has not stated a
legally cognizable claim. In his view, the court may do so

---

[1] The blood purportedly recovered on the roof matched Saunders-
El's DNA profile—a profile that is expected to occur in 1 in 57 quad-
rillion black individuals.

only on a Rule 12(b)(6) motion, and, therefore, impermissibly ruled against him. On the merits, Saunders-El argues that the fabrication of evidence, as well as the failure of police officers to inform the prosecution of that fabrication, violates a criminal defendant's due process rights and, as such, that his case should be reinstated.

## II. Discussion

We review the district court's grant of summary judgment de novo. *Huang v. Cont'l Cas. Co.*, 754 F.3d 447, 450 (7th Cir. 2014). We first address Saunders-El's claim of impropriety regarding the district court's dismissal of his case at summary judgment for failing to state a constitutional claim. Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Bluestein v. Cent. Wisc. Anesthesiology, S.C.*, 769 F.3d 944, 951 (7th Cir. 2014). Naturally, then, if Saunders-El's claim had no legal grounding, the district court not only was permitted to dismiss it, it was required to do so. Where a claim has no legal basis, there can be no genuine issue of *material* fact and the movant, by definition, is entitled to judgment as a matter of law.

Saunders-El suggests that the officers—by arguing that his § 1983 claim was legally insufficient—styled what should have been brought as a motion to dismiss as a motion for summary judgment, and that they did so to skirt Rule 12(b)'s requirement that motions to dismiss for failure to state a claim be made prior to the filing of an answer. *See* Fed. R. Civ. P. 12(b) ("A motion asserting [failure to state a claim upon which relief can be granted] must be made before pleading if a responsive pleading is

allowed."). But "[a] motion to dismiss made after the filing of an answer serves the same function as a motion for judgment on the pleadings and may be regarded as one." *Schy v. Susquehanna Corp.*, 419 F.2d 1112, 1115 (7th Cir. 1970). And Rule 12(h)(2) expressly authorizes a party to file a motion to dismiss for failure to state a claim pursuant to Rule 12(c), which permits the filing of a motion for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c), (h)(2). Therefore, Saunders-El's effort to characterize defendants' motion as a motion to dismiss masquerading as a motion for summary judgment is futile. No matter the label or the rule under which defendants' motion was filed, the district court was required to dismiss any legally untenable claims.

On the merits, Saunders-El maintains that allegations of evidence fabrication can support a due process claim under § 1983. We agree with him. In its two-page opinion, the district court did not address our recent case law in this area and, instead, focused on our prior decisions in *Fox v. Hayes*, 600 F.3d 819 (7th Cir. 2010); *Brooks v. City of Chicago*, 564 F.3d 830 (7th Cir. 2009); and *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001)—interpreting them as an edict from this court that evidence fabrication–based due process claims can never form the basis of a constitutional tort. That reading, not uncommon among district courts in this circuit it seems, is inaccurate and requires clarification. In *Newsome*, we established that the existence of a state law claim for malicious prosecution renders unavailable § 1983 as a vehicle for bringing a federal malicious prosecution claim. 256 F.3d at 750. In *Brooks*, we affirmed the dismissal of plaintiff's allegation

that "criminal proceedings were instituted against him based on false evidence or testimony," remarking that "such a claim 'is, in essence, one for malicious prosecution, rather than a due process violation.'" 564 F.3d at 833 (quoting *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003)). Finally, in *Fox*, we counseled against "shoehorning into the more general protections of the Fourteenth Amendment claims for which another amendment provides more specific protection." 600 F.3d at 841. There, we deemed the plaintiff's allegation that the defendants violated his due process rights by causing him to be falsely arrested, imprisoned, and prosecuted by "deliberately fabricat[ing] false statements and . . . obstruct[ing] justice" to be a hybrid of a malicious prosecution claim and a Fourth Amendment claim, rather than a due process claim. *Id.* at 841.

None of these decisions—individually or as a collection—stands for the proposition that fabricating evidence does not violate a defendant's due process, actionable pursuant to § 1983. Instead, they merely establish that allegations that sound in malicious prosecution must be brought pursuant to state law. To the extent that these decisions may have rendered the law in this area uncertain, our more recent decisions have been explicit. In *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012), we expressly stated that "a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way." We have reiterated this position several times since then. For instance, just two weeks before the district court issued its opinion in this case, we decided *Fields v. Wharrie*, 740 F.3d 1107 (7th

Cir. 2014) ("*Fields II*"), wherein we made clear that fabricating evidence, including witness testimony, violates a clearly established constitutional right, such that qualified immunity does not shield the manufacturers of such evidence from liability. *Id.* at 1114; *see also Petty v. City of Chicago*, 754 F.3d 416, 422 (7th Cir. 2014) ("In *Fields II*, we stated that a prosecutor who falsely creates evidence against a defendant violates the defendant's due process right."). Accordingly, the district court erred in holding, *categorically*, that a claim of evidence fabrication cannot form the basis of a due process claim under § 1983 and must instead be brought as a state law malicious prosecution claim.

Not every act of evidence fabrication offends one's due process rights, however—a point we elucidated in *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012). There, the plaintiff, who had been acquitted by a jury in his criminal case, alleged that the prosecutor and investigators conspired "to manufacture false evidence and bring trumped-up charges." *Id.* at 554. We held, though, that the plaintiff's acquittal foreclosed his claim:

> [In *Whitlock*] we held that a prosecutor acting in an investigatory capacity who fabricates evidence that is used to obtain a wrongful conviction violates a convicted defendant's clearly established due process rights. There, the plaintiffs, Whitlock and Steidl, alleged that police officers and prosecutors used fabricated evidence, such as pressuring witnesses to concoct stories of having witnessed the crime, to convict the

two of a high-profile double homicide. Whitlock and Steidl spent the next seventeen and twenty-one years in prison, respectively . . . . In both [*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000), a case highlighted by Alexander] and *Whitlock,* the alleged liberty deprivation came not from the initial arrest, but from the time spent in confinement *after* arrest—the eight months Zahrey spent in jail after having his bail revoked and the numerous years Whitlock and Steidl spent in prison after being wrongfully convicted. *Zahrey* and *Whitlock* are inapposite because the only liberty deprivation Alexander alleges stems from his initial arrest—he was released on bond that same day.

*Id.* at 557 (citations omitted). We added: "Nor does the burden of appearing in court and attending trial, in and of itself, constitute a deprivation of liberty. It would be anomalous to hold that attending a trial deprives a criminal defendant of liberty without due process of law, when the purpose of the trial is to *effectuate* due process." *Id.* at 557 n.2 (citations omitted).

Saunders-El, released on bond following his arrest and acquitted at trial, falls squarely within our holding in *Alexander*, and, accordingly, cannot make out an evidence fabrication–based due process violation. He may have an Illinois state law malicious prosecution claim, the elements of which are: (1) the defendants commenced judicial proceedings, (2) for which there was no probable

cause, (3) the proceeding were instituted or continued maliciously, (4) the proceedings were terminated in the plaintiff's favor, and (5) the plaintiff sustained an injury. *Sneed v. Rybicki*, 146 F.3d 478, 480–81 (7th Cir. 1998). But, as outlined above, that claim must be brought in state court. *See Newsome*, 256 F.3d at 750.

At oral argument, counsel for Saunders-El clarified that—despite the opaque presentation of the issue in his briefing and the district court's contrary interpretation of the complaint—Saunders-El's due process claim is dual-pronged: he alleges both that the fabrication of evidence violated his constitutional rights and, separately, that the police officers' failure to admit their misdeeds to the prosecution amounts to a withholding of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). A criminal defendant's *Brady* right is one that "the Constitution provides as part of its basic 'fair trial' guarantee." *United States v. Ruiz*, 536 U.S. 622, 626 (2002). "A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Mosley v. City of Chicago*, 614 F.3d 391, 397 (7th Cir. 2010). The Supreme Court has said that to demonstrate a *Brady* claim, a plaintiff must make a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435 (1995); *see also Strickler v. Greene*, 527 U.S. 263, 290 (1999). For that reason, at least the Sixth, Eighth, Tenth, and Eleventh Circuits have held that a trial that results in an acquittal can never produce a valid *Brady* claim. *See Mosley*, 614 F.3d at 397 (collecting cases); *Poventud v. City of New York*, 750 F.3d 121, 156 n.4 (2d Cir. 2014) (same). We have yet to

definitively decide that issue in this circuit (*see Mosley*, 614 F.3d at 397–98; *Bielanski v. Cnty. of Kane*, 550 F.3d 632, 644–45 (7th Cir. 2008)), although we have expressed our doubt "that an acquitted defendant can ever establish the requisite prejudice for a *Brady* violation." *Carvajal v. Dominguez*, 542 F.3d 561, 570 (7th Cir. 2008) (citing *Strickler*, 527 U.S. at 290). We need not address that issue today, however, because our case law forecloses Saunders-El's theory of *Brady*.

Saunders-El's *Brady* claim is premised on the police officers' silence following their alleged fabrication of the evidence—the absence of which would have altered the prosecutor's decision to go to trial at all, Saunders-El suggests. We have dealt on several occasions with similar *Brady* claims concerning accusations of police dishonesty. In *Gauger v. Hendle*, for instance, we rejected the plaintiff's argument that *Brady* requires police to disclose truthful versions of statements made during interrogations, finding "the proposed extension of *Brady* . . . difficult even to understand," since "[i]t implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence." 349 F.3d 354, 360 (7th Cir. 2003), *overruled in part on other grounds by Wallace v. City of Chicago*, 440 F.3d 421, 423 (7th Cir. 2006). Later, in *Sornberger v. City of Knoxville*, we determined that *Brady* cannot "serve as the basis of a cause of action against [police] officers for failing to disclose [the circumstances surrounding a coerced confession] to [a] prosecutor . . . ." 434 F.3d 1006, 1029 (7th Cir. 2006) (citation and internal quotation marks omitted). As we said, "[t]he Constitution does not require that police testify *truthfully*; rather 'the constitutional rule is that the defendant is entitled to a trial that will enable

jurors to determine where the truth lies.'" *Id.* (quoting *Buie v. McAdory*, 341 F.3d 623, 625–26 (7th Cir. 2003)). Consequently, in *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007), we upheld the dismissal of a *Brady* claim premised on an argument "that an officer is 'suppressing' evidence of the truth by making [a] false statement" to a prosecutor," noting that "[t]his court has already foreclosed this extension" of *Brady*. In the end, Saunders-El seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing, not for failing to disclose any existing piece of *evidence* to the prosecution. But our case law makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution. Accordingly, Saunders-El's *Brady* claim is more appropriately characterized as a claim for malicious prosecution—that is, a claim that the officers commenced his prosecution without probable cause—which cannot form the basis of a constitutional tort.

In any event, it would be entirely incongruous for us to endorse Saunders-El's *Brady* theory, in light of our holding in *Alexander*. Since, as *Alexander* holds, a police officer does not violate an acquitted defendant's due process rights when he fabricates evidence, it would defy any semblance of logic to conclude that the same officer subsequently violates the defendant's constitutional rights simply by remaining silent about that fabrication (and thus, without taking any additional affirmative action). In essence, Saunders-El's so-called *Brady* claim is simply a recast of his evidence fabrication claim, and our

precedent establishes that such a claim is not cognizable on account of his acquittal.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court, although on grounds different from those relied on below.