**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROGER WAYNE PARKER, | No. 22-55614 |
| *Plaintiff-Appellee*, | D.C. No. 5:21-cv-01280-JGB-KK |
| v. | |
| COUNTY OF RIVERSIDE; PAUL E. ZELLERBACK; SEAN LAFFERTY; TRICIA FRANSDAL; JEFFREY VAN WAGENEN, | OPINION |
| *Defendants-Appellants*. | |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted May 8, 2023
Pasadena, California

Filed August 15, 2023

Before: Andrew D. Hurwitz and Ryan D. Nelson, Circuit Judges.[*]

---

[*] This case was decided by quorum of the panel. *See* 28 U.S.C. § 46(d); Ninth Circuit General Order 3.2(h).

Per Curiam Opinion;
Concurrence by Judge R. Nelson

**SUMMARY**[**]

**Civil Rights/*Brady***

The panel reversed the district court's denial of defendants' motion for judgment on the pleadings, and remanded, in an action brought pursuant to 42 U.S.C. § 1983 alleging defendants violated plaintiff's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing another person's confession to a murder for which plaintiff was arrested and held for almost four years before the charges were dismissed.

The panel held that plaintiff could not show prejudice from the nondisclosure of the confession. A *Brady* violation requires that the withheld evidence have a reasonable probability of affecting a judicial proceeding. Plaintiff did not state a *Brady* claim because he did not assert the nondisclosure would have changed the result of any proceeding in his criminal case.

The panel rejected plaintiff's contention that the prejudice inquiry should be whether the withheld evidence had a reasonable probability of affecting counsel's strategy. The panel noted that no court has adopted plaintiff's proposed rule, and most other courts require a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

conviction to establish prejudice. Moreover, here, the cause of plaintiff's continued detention was not the suppression of the confession, but the District Attorney's continued prosecution even after receiving the confession.

The panel held that plaintiff might be able to establish a different due process claim, as recognized in *Tatum v. Moody*, 768 F.3d 806 (9th Cir. 2014), arising out of his continued detention after it was or should have been known that he was entitled to release. In this interlocutory appeal, however, the panel was not asked to address the merits of such a claim. Plaintiff can seek leave to amend his complaint to assert that claim on remand.

Concurring, Judge R. Nelson wrote separately to address why *Brady* should not be extended to pretrial proceedings, explaining that the Supreme Court has framed *Brady* as a trial right and has never extended *Brady* to pretrial hearings.

## COUNSEL

Tony M. Sain (argued) and Abigail J.R. McLaughlin (argued), Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, California, for Defendants-Appellants.

Kimberly S. Trimble (argued), Gerald B. Singleton, and John C. Lemon, Singleton Schreiber LLP, San Diego, California, for Plaintiff-Appellee.

Eva Bitran and Summer Lacey, American Civil Liberties Union Foundation of Southern California, Los Angeles, California; Avram Frey, American Civil Liberties Union Foundation of Northern California, San Francisco, California; Lauren Bonds, National Police Accountability

Project, Kansas City, Kansas; Eliana Machefsky, National Police Accountability Project, Berkeley, California; for Amici Curiae American Civil Liberties Union of Southern California, American Civil Liberties Union of Northern California, and National Police Accountability Project of the National Lawyers' Guild.

Whitney Z. Bernstein and Sandra C. Lechman, Bienert Katzman Littrell Williams LLP, San Clemente, California, for Amicus Curiae The Law Enforcement Action Partnership.

**OPINION**

PER CURIAM:

Roger Wayne Parker was arrested for murder and held for almost four years before the charges against him were dismissed, months after another person confessed to the crime. Years later, Parker then sued the County of Riverside and various County officials under 42 U.S.C. § 1983, claiming that they had violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing the separate confession. The district court denied a motion for judgment on the pleadings on the *Brady* claim. We reverse and remand, without prejudice to Parker asserting a different due process claim. A *Brady* violation requires that the withheld evidence have a reasonable probability of affecting a judicial proceeding, and no such proceeding was affected here.

I

Brandon Stevenson was murdered at a house Parker shared with Willie Womack.[1]  Parker was not home when the police arrived but was detained upon his return.  After a fifteen-hour interrogation, Parker, who is developmentally delayed, confessed to the murder but claims that he did so "sarcastically" and because of police pressure.

Prosecutors had doubts about Parker's guilt from the outset.  The first prosecutor assigned to the case, Deputy District Attorney (DA) Lisa DiMaria, believed the confession was a sham.  At a staff meeting days after Parker's arrest, she expressed serious concerns about his guilt.  A year later, after receiving an analysis of the physical evidence (including DNA), DiMaria requested authorization to dismiss the case because of Parker's likely innocence.  Assistant DA Sean Lafferty denied the request and reassigned the case to Deputy DA Chris Ross.  Lafferty explained that the DA insisted on pursuing the charges and DiMaria refused to prosecute because she believed Parker was innocent.  DiMaria later shared her concerns with Ross directly.

Ross also came to question Parker's guilt.  Over the next two and a half years, Ross repeatedly told Lafferty that prosecutors lacked probable cause to hold Parker and could not prove the charge.  Lafferty and other supervisors nonetheless refused to dismiss the case.

Over three years into Parker's detention, Ross obtained recordings of phone calls in which Womack, the former

---

[1] We take these facts from the allegations in the complaint, which we accept as true.  *See Honey v. Distelrath*, 195 F.3d 531, 532 (9th Cir. 1999).

roommate, admitted to the murder. Lafferty instructed Ross not to disclose the calls to Parker's attorney and removed Ross from the case.

Approximately six months after discovering the confession, the DA's Office requested dismissal due to insufficiency of the evidence but did not notify Parker of Womack's confession. When charges were dismissed, Parker had been detained for almost four years. There had never been a preliminary hearing because it was "continued several times." Parker first learned of Womack's confession six years after his release, and the Superior Court later found him factually innocent.

Parker then filed a § 1983 action against the County, DA, and supervisors in the DA's Office, asserting denial of due process arising out of the suppression of exculpatory evidence in violation of the Fifth Amendment and *Brady*. The district court denied a defense motion for judgment on the pleadings, holding that Parker stated a "*Brady*-related claim" because the suppression of Womack's confession prolonged his pretrial detention. The district court certified the *Brady* issue for an interlocutory appeal, which we accepted.

## II

We have jurisdiction under 28 U.S.C. § 1292(b). "We review de novo a district court's judgment on the pleadings." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 939 (9th Cir. 2009). "Judgment on the pleadings is proper when, taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law." *Honey*, 195 F.3d at 532.

## III

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. *Brady* requires the disclosure of "impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999). Even inadvertent failure to disclose may violate this duty, which does not require a criminal defendant's request. *See United States v. Bruce*, 984 F.3d 884, 894 (9th Cir. 2021). Disclosures "must be made at a time when [the] disclosure would be of value to the accused." *United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) (quoting *United States v. Gordon*, 844 F.2d 1397, 1403 (9th Cir. 1988)).

A *Brady* violation has three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler*, 527 U.S. at 281–82. The parties dispute only the third element, whether Parker can show prejudice from the nondisclosure.

The principle underlying *Brady* is "not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." 373 U.S. at 87. While "[t]he term '*Brady* violation' is sometimes used to refer to any breach of the broad obligation to disclose exculpatory evidence," the Supreme Court has explained that "there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different

verdict." *Strickler*, 527 U.S. at 281; *see also Kyles v. Whitley*, 514 U.S. 419, 435 (1995) (*Brady* violation requires showing "that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict").

 "A 'true' *Brady* violation therefore occurs only where . . . the evidence was material to the outcome such that the defendant was prejudiced by the suppression." *Bailey v. Rae*, 339 F.3d 1107, 1113 (9th Cir. 2003). "Evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 582 U.S. 313, 324 (2017) (cleaned up); *see also United States v. Kohring*, 637 F.3d 895, 913 (9th Cir. 2011) (observing that a new trial is usually "the appropriate remedy" for a *Brady* violation (quoting *United States v. Chapman*, 524 F.3d 1073, 1086 (9th Cir. 2008))); *United States v. Jernigan*, 492 F.3d 1050, 1053 (9th Cir. 2007) (en banc) ("The touchstone of materiality review is whether admission of the suppressed evidence would have created a reasonable probability of a different result." (cleaned up)).

We have applied *Brady* in the pretrial context. For instance, "a defendant challenging the voluntariness of a guilty plea may assert a *Brady* claim." *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995). We assess prejudice in this circumstance by asking "whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial." *Id.* at 1454. Likewise, we have held that *Brady* applies to a hearing on a motion to suppress. *See United States v. Gamez-Orduño*, 235 F.3d 453, 461 (9th Cir. 2000). Even in the pretrial context, the

inquiry is "if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Id.*

The difficulty in this case is that there was no judicial proceeding that could be affected by the withheld confession. Without that, Parker cannot show *Brady* prejudice, and his *Brady* claim fails.[2]

Parker seeks to extend our rule, asserting that the prejudice inquiry should be whether the withheld evidence had a reasonable probability of affecting his counsel's strategy. Had the DA's Office turned over the confession, Parker contends, there is a reasonable probability that his counsel would have demanded a preliminary hearing rather than consent to continuances that prolonged his pretrial detention.

But Parker's harm did not result from a proceeding tainted by nondisclosure, and we see no reason to extend *Brady* beyond its limited purpose. Although *Brady* sounds in due process, *see Dist. Att'y's Off. for the Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68 (2009), it remedies the injustice that results when "a state has contrived a conviction through the pretense of a trial," *Brady*, 373 U.S. at 86 (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). To implicate *Brady*, the harm must result from the government's failure to disclose material exculpatory or impeaching evidence. Here, the cause of Parker's continued detention was not the suppression, but the DA's continued prosecution even after receiving Womack's confession. Had

---

[2] We reject Parker's argument that *Mathews v. Eldridge*, 424 U.S. 319 (1976), controls whether the *Brady* claim is viable. Whether additional procedural safeguards are warranted, *see id.* at 335, is irrelevant to whether Parker meets *Brady*'s substantive requirements.

the DA immediately dismissed the charges against Parker after learning of the confession, he would not have been detained for the extra six months, whether or not the confession had been turned over.

No court has adopted Parker's proposed rule. Indeed, most other courts have required a conviction to establish prejudice. *See Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012) (rejecting applicability of *Brady* to pretrial proceedings); *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007) ("A plaintiff cannot establish materiality unless the case goes to trial and the suppression of exculpatory evidence affects the outcome."); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998) (per curiam). These courts reason that *Brady* requires a conviction because the Supreme Court has instructed that "*Brady* is violated only when 'there is a reasonable probability that the suppressed evidence would have produced a different *verdict*.'" *Livers*, 700 F.3d at 359 (quoting *Strickler*, 527 U.S. at 281); *see also Becker*, 494 F.3d at 924 (describing *Brady* as "framing the right to exculpatory evidence only in terms of providing a fair trial"); *Flores*, 137 F.3d at 1278 (*Brady* not implicated because the plaintiff "did not suffer the effects of an unfair trial"). But neither the Ninth Circuit nor any other circuit has found *Brady* prejudice when the nondisclosure did not affect the outcome of a criminal proceeding.

Parker did not state a *Brady* claim because he does not claim the nondisclosure would have changed the result of any proceeding in his criminal case. On appeal, Parker cited *Tatum v. Moody*, which holds that a defendant can state a due process claim arising out of "continued detention after it was or should have been known that [he] was entitled to release." 768 F.3d 806, 816 (9th Cir. 2014) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir. 2001)).

Parker may well be able to state such a claim, but it is not a *Brady* claim. The claim recognized in *Tatum*, which "can be characterized as one . . . of mistaken identity," *id.* at 815, does not rest on prosecutors' failure to provide the defense with material exculpatory evidence, *see Lee*, 250 F.3d at 683–85. Indeed, *Tatum* did not rely on *Brady*, but instead on *Baker v. McCollan*, 443 U.S. 137, 145 (1979), for the proposition that under certain circumstances, "detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of liberty without due process of law." *Tatum*, 768 F.3d at 816 (cleaned up).

In this interlocutory appeal, however, we are not asked to address the merits of a *Tatum–Lee* claim. On remand, Parker can seek leave to amend his complaint to assert that claim.[3]

## IV

Because there was no judicial proceeding, Parker cannot show that he was prejudiced by any failure to disclose *Brady* evidence.

**REVERSED AND REMANDED.** Each party to bear its own costs.

---

[3] Parker suggested for the first time at argument that his complaint stated a general due process claim. We do not interpret his extant complaint, which cites *Brady* and tracks the elements of a *Brady* claim, to do so. The district court also did not read Parker's complaint more broadly. And Parker's answering brief omitted this argument and discussed non-*Brady* cases only to support his *Brady* claim.

R. NELSON, Circuit Judge, concurring:

I write separately to address why *Brady* should not be extended to pretrial proceedings. The Supreme Court has framed *Brady* as a trial right; it has never extended *Brady* to pretrial hearings. Where the Supreme Court is silent, we should extend precedent to novel contexts only when consistent with the Constitution's text and original public meaning, neither of which appear to support applying *Brady* pretrial. In previously extending *Brady*, we have eschewed the Supreme Court's guidance and split from most of our sister circuits. While our pretrial *Brady* cases do not control the outcome in this case, making en banc review unwarranted here, we should correct this error in an appropriate case.

I

We are bound to follow Supreme Court precedent. *See Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir. 2001). We do not, however, "dissect the sentences of the United States Reports as though they were the United States Code." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). Instead, we "read general language in judicial opinions" to "refer[] in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Illinois v. Lidster*, 540 U.S. 419, 424 (2004).

*Brady* arose in the context of a suppressed confession that led to a criminal conviction, and its facts illustrate the contours of the due process right recognized. The petitioner, John Brady, and his companion, Boblit, were found guilty of first-degree murder and sentenced to death. *See Brady v. Maryland*, 373 U.S. 83, 84 (1963). Brady admitted his

participation but claimed that Boblit did the actual killing. *See id.* After an unsuccessful appeal, Brady learned that the prosecution had withheld Boblit's out-of-court statement admitting to the homicide. *See id.* Brady then sought post-conviction relief because of the suppressed statement, and the Maryland Court of Appeals (then the court of last resort in Maryland) recognized a due process violation. *See id.* at 85. The question before the Supreme Court was "whether petitioner was denied a federal right when the Court of Appeals restricted the new trial to the question of punishment." *Id.*

The Supreme Court largely relied on three precedents to support its holding, each of which focused on erroneous convictions obtained through an unfair trial. *See id.* at 86–87. First, *Mooney v. Holohan* explained,

> [Due process] is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has *contrived a conviction* through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.

294 U.S. 103, 112 (1935) (emphasis added). Second, in *Pyle v. Kansas*, the Supreme Court reiterated its concern with a conviction resulting from "perjured testimony, knowingly used by the State authorities to obtain his *conviction*, and from the deliberate suppression by those same authorities of evidence favorable to him." 317 U.S. 213, 216 (1942) (emphasis added). Finally, in *Napue v. Illinois*, the Court re-

emphasized "[t]he principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction."   360 U.S. 264, 269 (1959).   *Brady* distilled the principle of those decisions as "avoidance of an *unfair trial* to the accused."   373 U.S. at 87 (emphasis added).

Since *Brady*, the Supreme Court has repeatedly emphasized the fairness of trial when analyzing *Brady* prejudice. *See, e.g.*, *United States v. Agurs*, 427 U.S. 97, 112 (1976) ("The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt."); *Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); *Turner v. United States*, 582 U.S. 313, 324 (2017) ("A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." (cleaned up)).

Put simply, *Brady*'s due process holding is confined to trial.  Nothing in these decisions suggests that *Brady* applies in pretrial proceedings.

## II

## A

The Supreme Court's silence does not foreclose our extension of *Brady* to pretrial proceedings.  But we should do so only if consistent with the Constitution's text and original public meaning.  While that issue can be fully addressed in a future case, the Constitution does not appear to support our extension.   And the Supreme Court's

instruction in related areas strongly suggests that we should rethink our caselaw.

While we are bound to follow the Supreme Court's precedents, "our fidelity is not blind." *NLRB v. Int'l Ass'n of Bridge, Structural, Ornamental, & Reinforcing Iron Workers, Local 229*, 974 F.3d 1106, 1116 (9th Cir. 2020) (Bumatay, J., dissenting from the denial of rehearing en banc). "We always have a 'duty to interpret the Constitution in light of its text, structure, and original understanding,'" *id.* (citation omitted), and should not extend "ahistorical, atextual" precedent beyond its original scope and context, *Kennedy v. Bremerton Sch. Dist.*, 4 F.4th 910, 945 (9th Cir. 2021) (R. Nelson, J., dissenting from the denial of rehearing en banc). "So if we are forced to choose between upholding the Constitution and extending precedent in direct conflict with the Constitution, the choice should be clear: Our duty is to apply the Constitution—not extend precedent." *Texas v. Rettig*, 993 F.3d 408, 417 (5th Cir. 2021) (Ho, J., dissenting from the denial of rehearing en banc) (cleaned up).

"In light of the Supreme Court's silence on" the application of *Brady* to pretrial proceedings, "we must look to the Constitution's original meaning." *Preterm-Cleveland v. McCloud*, 994 F.3d 512, 545 (6th Cir. 2021) (en banc) (Bush, J., concurring). The Fifth and Fourteenth Amendments prohibit the federal and state governments respectively from depriving a person "of life, liberty, or property, without due process of law." U.S. Const. amends. V & XIV. Admittedly, the term "due process" is ambiguous. *See* Max Crema & Lawrence B. Solum, *The Original Meaning of "Due Process of Law" in the Fifth Amendment*, 108 Va. L. Rev. 447, 451 (2022). Early American law, however, suggests that the right crafted by *Brady* was itself

not encapsulated in the traditional conception of due process. *See* Michael Moore, *Criminal Discovery*, 19 Hastings L.J. 865, 865–70 (1968).  The early courts appear to have adopted the English common-law rule that courts lacked the power, without legislation, to order prosecutors to reveal evidence in the state's possession. *See id.* at 866.  Indeed, even in 1923, courts rejected pretrial discovery for criminal defendants. *Cf. United States v. Garsson*, 291 F. 646, 649 (S.D.N.Y. 1923) (L. Hand, J.) ("Why [the criminal defendant] should in advance have the whole evidence against him to pick over at his leisure, and make his defense, fairly or foully, I have never been able to see.").  Given that *Brady* is in tension with the text and original public meaning of the Constitution, we should not extend it as we have.

Separately, as I have previously noted, our holding that *Brady* applies during plea bargaining conflicts with the Supreme Court's decision in *United States v. Ruiz*, 536 U.S. 622 (2002). *See United States v. Harshman*, No. 19-35131, 2021 WL 3929926, at *2–4 (9th Cir. Sept. 2, 2021) (R. Nelson, J., concurring).  *Ruiz* held that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."  536 U.S. at 633.  In reaching this holding, the Supreme Court reasoned that "a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea, could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.* at 631.  By allowing criminal defendants to raise *Brady* claims at the plea stage, we may undermine the goals of plea bargaining that the Supreme Court has identified.

In short, the Constitution's text and original public meaning counsel against extending *Brady*.  And Supreme Court precedent suggests that *Brady* should not apply during plea bargaining, or at least, that we should revisit this issue with the benefit of *Ruiz*.

B

What about our sister circuits?  Not all have addressed the issues in *Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) (plea hearing), and *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (suppression hearing).  But published decisions from other circuits conflict with our holdings and confirm that we have stretched the *Brady* right too far.

The First, Third, Fourth and Fifth Circuits underscore *Brady*'s concern with fairness in the ultimate conviction and accordingly reject its application to plea hearings.  "To constitute a *Brady* violation, the nondisclosure must do more than impede the defendant's ability to prepare for trial; it must adversely affect the court's ability to reach a just conclusion, to the prejudice of the defendant."  *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984), *abrogated on other grounds by Dennis v. Sec'y, Pa. Dep't of Corr.*, 834 F.3d 263, 289–93 (3d Cir. 2016) (en banc).  "It is, therefore, universally acknowledged that the right memorialized in *Brady* is a trial right."  *United States v. Mathur*, 624 F.3d 498, 507 (1st Cir. 2010); *see also United States v. Moussaoui*, 591 F.3d 263, 285 (4th Cir. 2010).  Rejecting the extension of *Brady* to pretrial plea negotiations, the First Circuit explained, "courts enforce *Brady* in order 'to minimize the chance that an innocent person [will] be found guilty.'"  *Mathur*, 624 F.3d at 507 (citation omitted).  The Fourth Circuit reasoned similarly: "When a defendant pleads

guilty, those concerns [of a fair verdict] are almost completely eliminated because his guilt is admitted." *Moussaoui*, 591 F.3d at 285. And the importance of the plea hearing "provides no support for an unprecedented expansion of *Brady*." *Mathur*, 624 F.3d at 507; *see also Alvarez v. City of Brownsville*, 904 F.3d 382, 394 (5th Cir. 2018) ("In sum, case law from the Supreme Court, [the Fifth Circuit], and other circuits does not affirmatively establish that a constitutional violation occurs when *Brady* material is not shared during the plea bargaining process.").

The Sixth, Eighth, Tenth, and Eleventh Circuits parse the Supreme Court's materiality test—which requires the suppressed evidence to affect the verdict or outcome of trial—to limit *Brady* prejudice to cases in which the criminal defendant is convicted. "A plaintiff cannot establish materiality unless the case goes to trial and the suppression of exculpatory evidence affects the outcome." *Becker v. Kroll*, 494 F.3d 904, 924 (10th Cir. 2007); *see also Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012) (in qualified immunity context, no *Brady* violation absent conviction); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998). Likewise, when "the underlying criminal proceeding terminated in appellant's favor, he has not been injured by the act of wrongful suppression of exculpatory evidence." *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988).

The Seventh Circuit has "expressed doubt that an acquitted defendant can ever establish the requisite prejudice for a *Brady* claim." *Alexander v. McKinney*, 692 F.3d 553, 556 (7th Cir. 2012). Having yet to decide the issue, the Seventh Circuit has allowed *Brady* claims where "an acquitted defendant showed that disclosure of the suppressed evidence would have altered the decision to go to trial." *Id.*

Note, however, that the Seventh Circuit's analysis differs from ours in focusing on the prosecutor's decision, rather than the defendant's, to proceed to trial. *See Parker v. City of Chicago*, 594 F.3d 551, 554 (7th Cir. 2009) ("Parish may still have had a *Brady*-type due process claim after he was acquitted, if (as he alleges) prompt disclosure of the suppressed evidence would have altered the prosecution's decision to proceed to trial.").

Against these persuasive decisions, our only ally is the Second Circuit. *See United States v. Overton*, 24 F.4th 870, 878 (2d Cir. 2022). Adopting a similar prejudice test, the Second Circuit allows *Brady* claims during a plea hearing. *See id.* But the Second Circuit did not consider whether extending *Brady* adhered to the Constitution's original public meaning. *See Miller v. Angliker*, 848 F.2d 1312, 1319–22 (2d Cir. 1988).

In sum, all but two of our sister circuits have appropriately limited *Brady* to trial. We should join them in an appropriate case.

## III

Our duty is to uphold the Constitution. We have deviated from its text and original public meaning in extending *Brady*. In an appropriate case, we should realign our *Brady* caselaw with the Constitution and the prevailing view among the other circuits.