NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 28 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff - Appellee, v. ANTHONY UVARI, Defendant - Appellant. | No. 23-910 D.C. No. 2:18-cr-00253-APG-NJK-1 MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Nevada
Andrew P. Gordon, District Judge, Presiding

Argued and Submitted October 10, 2024
Las Vegas, Nevada

Before: BEA, BENNETT, and MILLER, Circuit Judges.

Anthony Uvari, a professional gambler, submitted various false personal and

corporate tax returns.  Prior to being indicted, Uvari signed two waivers of the statute

of limitations.  Following a jury trial, Uvari was convicted on four counts of making

and subscribing false tax returns in violation of 26 U.S.C. § 7206(1).  Uvari was

sentenced to thirty months of imprisonment and twelve months of supervised release

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

and was assessed a $125,000 fine. Uvari was also ordered to pay the IRS $227,631 in restitution. Uvari appeals his conviction and fine. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

1.     Uvari knowingly and voluntarily signed the two waivers of the statute of limitations, and the waivers are not ambiguous. A district court's denial of a motion for a judgment of acquittal and its conclusions regarding the applicability of a statute of limitations are both reviewed de novo. *United States v. Wanland*, 830 F.3d 947, 952 (9th Cir. 2016). Similarly, we review de novo the enforceability of a waiver of the statute of limitations. *See United States v. Caldwell*, 859 F.2d 805, 806 (9th Cir. 1988). The district court's factual findings are reviewed for clear error. *United States v. Lo*, 839 F.3d 777, 783 (9th Cir. 2016). "[T]he standard for acceptance of a waiver of the statute of limitations should be the same as the standard in other waiver contexts, *i.e.*, whether the waiver was knowing and voluntary." *Caldwell*, 859 F.2d at 806. A waiver is knowing and voluntary if it is made with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

The waivers here relate to Counts One and Two of Uvari's indictment. The district court found that Uvari knowingly and voluntarily signed the waivers. Uvari claims that decision was erroneous, because the waivers "lacked necessary

information for Uvari to accurately comprehend their import," and they "are also ambiguous." We disagree.

The language of the waivers is clear. The first waiver, signed January 22, 2018, informed Uvari that the government was investigating him and "contemplating seeking an indictment" against him "for possible violations of Title 26, United States Code, Sections 7206(1) (*Making and Subscribing a False Return*) and 7206(2) (*Aiding or Assisting in the Preparation and Presentation of a False Return*)." The waiver explained that "the statute of limitations for the offenses described above is six (6) years from the date of the last act that constitutes the commission of the offense." The waiver recited: "That the period between January 15, 2018, and May 15, 2018, shall be excluded from any calculation of the Statute of Limitations regarding these specific offenses. I reserve the right to challenge the charges on any other ground." And the waiver also stated: "I, ANTHONY UVARI, have consulted with my attorneys before waiving the Statute of Limitations as specified above. I knowingly and voluntarily execute this waiver of the Statute of Limitations."

The second waiver, dated May 24, 2018, provided the same general information, incorporated the January 22 waiver, and noted it applied to the time period "between May 15, 2018 and August 15, 2018."

3                                                              23-910

Both waivers informed Uvari of (1) the possible violations of the specific provisions of the United States Code for which he was being investigated, (2) the office investigating him, (3) the United States Code provision providing a statute of limitations for the offenses, (4) the length of the statute of limitations, (5) the periods of time that were tolled/excluded for statute of limitations purposes, and (6) the bargained-for exchange that he would receive if he signed the waivers, which was that his attorneys would have "the opportunity" to meet with the government and "attempt to negotiate a resolution of the potential charges" before he was charged.

Both Uvari and his retained counsel signed the waivers, and Uvari affirmed in writing that he "knowingly and voluntarily" signed the waivers after consultation with his attorneys. Additional record evidence reflects that Uvari and his counsel engaged in conversations about the waivers, and that Uvari signed them with advice of competent counsel. As one typical example of the communications Uvari had with counsel, on December 20, 2017, Uvari and his attorney "spoke over the phone regarding the [initial] waiver the government was proposing," and his attorney "stated signing it would give them additional time to discuss [his] case with the government." Uvari then emailed his attorney "to discuss the tolling agreement," and they met in person to broadly discuss his case, discovery from the government, and the waivers.

23-910

Collectively, the waivers explained to Uvari that the statute of limitations was six years and the waivers would "exclude[] from any calculation" the time period "between January 15, 2018," and "August 15, 2018." A reasonable person would understand the government to be seeking the waiver because the six years might otherwise expire during that period of time, or shortly thereafter.

It does not matter that the waivers used the word "exclude" rather than "toll." Although the waivers did not use the word "toll,"[1] the effect of the waivers excluding the seven-month period was to toll the running of the statute of limitations for those seven months.

2.    There was sufficient evidence to show Uvari signed his 2011 personal income tax forms under penalty of perjury. We review de novo whether there is sufficient evidence to support a conviction when the issue is raised in a motion for judgment of acquittal. *United States v. Door*, 996 F.3d 606, 616 (9th Cir. 2021). To determine whether the evidence was sufficient to support a criminal conviction, we must "determine whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319

---

[1] While the waivers do not use the word "toll," the parties' contemporaneous communications do.

(1979)). In doing so, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any [] conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

Uvari argues that, because "there is no written signature on the 2011 individual income tax return underlying Count One," and "the only identifiers on the return are Uvari's 'Taxpayer Personal Identification Number (TPIN)' and the 'Electronic Returner Originator (ERO) PIN' of his tax preparer, CPA Ron Carroccio," the government failed to produce sufficient evidence showing Uvari "knew his TPIN was verifying the return under the penalties of perjury."

To prove a violation of 26 U.S.C. § 7206(1), the government must show:

> (1) the defendant made and subscribed a return, statement, or other document that was incorrect as to a material matter; (2) the return, statement, or other document subscribed by the defendant contained a written declaration that it was made under the penalties of perjury; (3) the defendant did not believe the return, statement, or other document to be true and correct as to every material matter; and (4) the defendant falsely subscribed to the return, statement, or other document willfully, with the specific intent to violate the law.

*United States v. Boulware*, 384 F.3d 794, 810 (9th Cir. 2004) (quoting *United States v. Marabelles*, 724 F.2d 1374, 1380 (9th Cir. 1984)).

The government adduced more than sufficient evidence at trial to establish that Uvari knew he verified his return under penalty of perjury. IRS agent Roman Hernandez testified that "the IRS won't receive a pen and ink signature from you in most cases. It's always signed by a PIN," when filed electronically. Either the

23-910

taxpayer could input a PIN or the tax preparer could enter a PIN on the taxpayer's behalf. However a PIN is used, Hernandez affirmed that "there has to be some sort of statement saying, 'I declare under the penalty of perjury that what is in here is true and correct.'"

We also disagree with Uvari's claim that, because the government did not produce a Form 8879, generated when a taxpayer authorizes a tax preparer to enter a PIN on his behalf, no evidence shows Uvari authorized his accountant to file his return under penalty of perjury. Uvari wrote to the IRS in 2017 regarding his 2011 return and the refund he wanted the IRS to pay: "On December 22, 2012 I submitted to you for review all data requested for audit for tax year 2011. I e-filed the original Form 1040 for 2011 on or about February 1, 2012. The return indicated a tax refund due of $561,144." A reasonable factfinder could infer from that letter that *Uvari* filed the original Form 1040 or that he authorized his accountant to file the return through a Form 8879. In either event, there was no need for the government to produce the Form 8879.

3.     There was also sufficient evidence that venue was proper in Nevada. "We review the district court's determination on venue *de novo*." *United States v. Lukashov*, 694 F.3d 1107, 1119 (9th Cir. 2012). It is the government's burden to prove venue by a preponderance of the evidence, which "can be established either directly or circumstantially." *United States v. Powell*, 498 F.2d 890, 891 (9th Cir.

1974). "The act of making a tax return commences when one prepares and furnishes information material to the return and continues until that information is received by the IRS." *United States v. Pace*, 314 F.3d 344, 352 (9th Cir. 2002). Therefore, "venue is proper in any district in which the continuing conduct has occurred." *Id.* Uvari lived in Las Vegas. Each of Uvari's tax returns that the government introduced contained a Las Vegas address. His 2017 letter to the IRS in which he explained he had e-filed the tax return underlying Count One came from an address in Las Vegas. The tax return underlying Count Two of the indictment lists the address of one of Uvari's corporate entities in Las Vegas and directed any refund check to be sent to that Las Vegas address. Venue was proper in Nevada.[2]

4.      Uvari argues that the government committed a *Brady* violation because it "failed to disclose that the IRS's own system populated and generated the W-2G forms underlying Count One from data that was input[ted] by Uvari's accountant" and that "[t]his information was favorable to Uvari because it was both exculpatory and impeachment evidence."

We review alleged violations of *Brady v. Maryland*, 373 U.S. 83 (1963), de novo. *United States v. Ross*, 372 F.3d 1097, 1107 (9th Cir. 2004). There are three

---

[2] Uvari points to a tax return filed from his preparer's office in New York and argues that shows venue was not proper in Nevada. The New York filing might show New York was another proper venue, but it does not show that Nevada was not a proper venue.

elements to a *Brady* violation: "'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Parker v. County of Riverside*, 78 F.4th 1109, 1112 (9th Cir. 2023) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)). The burden is on Uvari to establish a *Brady* claim. *See United States v. Zuno-Arce*, 44 F.3d 1420, 1425 (9th Cir. 1995). Uvari has not met his burden.

Uvari's counsel questioned IRS Revenue Agent Russell Brickey about how the IRS electronic filing system operates and that the IRS creates an auto-populated W-2G Form. Even assuming information about the IRS filing system was unavailable to Uvari, that evidence was not material to Uvari's defense, and no prejudice resulted from the government's failure to disclose it. As the district court noted, the IRS simply "hits the print button" and does not generate or create the data underlying the Form W-2G report; rather, it captures and replicates the information input by either Uvari or his tax preparer.

The W-2Gs that were printed on the back of Uvari's 2011 tax return did not match the actual W-2Gs from the gambling entities that reported his winnings. But the IRS system's printing of W-2Gs does not conflict with Uvari's defense, which is that Carroccio input the data and any discrepancy in the data was not because of any fraud by Uvari, but rather a mistake by Carroccio.

23-910

Uvari argues that the government's failure "to disclose that the IRS's own system populated and generated the W-2G forms underlying Count One from data that was input by Uvari's accountant," warrants overturning his conviction. Uvari claims that he could have used the supposedly withheld information to (1) retain an expert on IRS software, (2) tailor voir dire differently, (3) show Uvari did not create the W-2G documents, and (4) cross examine government experts differently. First, Uvari *did* retain an expert and *did* ask the expert about the IRS's filing system. Uvari's expert stated that "the IRS does not generate W-2G forms." Uvari knew that (1) his tax return at issue was filed electronically and (2) the IRS does not "generate" W-2G Forms. He therefore had the requisite knowledge to ask his expert about from where the data underlying his fraudulent tax returns came and how the IRS stored that data. Second, Uvari presents no argument as to how the knowledge of the IRS's system would have made a material impact on the voir dire process. Third, Uvari *knew* his data was electronically filed and had all the knowledge necessary to argue that electronically filed data carries a higher risk of mistakes. Finally, Uvari argues he could have asked the government's experts "Did you know that the IRS populated and generated these documents?" That question again overstates the importance of Agent Brickey's testimony—the IRS did not come up with, create, populate, or generate *any* of the data underlying the tax returns at issue, including the earnings and withholdings reported on Uvari's W-2G Forms.

"Proof of prejudice must 'be definite and not speculative.'" *United States v. Manning*, 56 F.3d 1188, 1194 (9th Cir. 1995) (quoting *United States v. Butz*, 982 F.2d 1378, 1380 (9th Cir. 1993)). Uvari has not explained how the processing of data by the IRS electronic system is exculpatory. Absent evidence that the IRS did something to the data input into the system or that the information that Uvari provided to his tax preparer was different from the information his preparer provided to the IRS, Uvari has not shown sufficient evidence that the way the IRS electronic system operates is even properly considered *Brady* material. Even if it were, "the relative value of the evidence in light of the proceedings" before the disclosure was minimal, and there is no indication that pretrial disclosure would have "altered the prosecution or defense strategy." *United States v. Cloud*, 102 F.4th 968, 980 (9th Cir. 2024). Uvari was therefore not prejudiced by the lack of disclosure.

5. The district court did not err in instructing the jury that it could find Uvari guilty if it found that he had "caused or authorized" another person to file the fraudulent returns, nor did the district court lower the government's burden by "bootstrapping" some of the required elements. "Whether jury instructions omit or misstate elements of a statutory crime . . . [is a] question[] of law reviewed de novo." *United States v. Christensen*, 828 F.3d 763, 785 (9th Cir. 2015), *as amended* (July 8, 2016). A district court's formulation of jury instructions is reviewed for abuse of discretion. *United States v. Cabrera*, 83 F.4th 729, 736 (9th Cir. 2023). The district

court instructed the jury that "[t]he government can establish that Mr. Uvari signed and filed a tax return with proof that he either signed and filed, *or caused or authorized another person to sign and file*, the return" (emphasis added). Uvari argues that the instruction expanded the offense elements beyond that charged in the indictment.

But "Uvari acknowledges that aiding and abetting is implied for every substantive federal offense." The government may establish the elements of 26 U.S.C. § 7206(1) by showing that Uvari caused or authorized another person to file the return. *See United States v. Armstrong*, 909 F.2d 1238, 1241–43 (9th Cir. 1990). Uvari's argument fails because "aiding and abetting is a different means of committing a single crime," it is "not a separate offense itself," and "the government ha[s] no obligation to elect between charging a substantive offense and charging liability on an aiding and abetting theory." *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005); *see also Armstrong*, 909 F.2d at 1241 (explaining that "an indictment need not specifically charge 'aiding and abetting' or 'causing' the commission of an offense against the United States, in order to support a jury verdict based upon a finding of either" (quoting *United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966))).

Uvari's argument that the district court's instructions lowered the government's burden of proof also fails. The court instructed that to find Uvari

guilty, the jury must find beyond a reasonable doubt that the government proved that:

> First, Mr. Uvari signed and filed a tax return that he knew contained false information as to a material matter;
>
> Second, the tax return contained a written declaration that it was being signed subject to the penalties of perjury; and
>
> Third, in filing the false tax return, Mr. Uvari acted willfully.

This instruction captures the elements of a 26 U.S.C. § 7206(1) violation. *See Boulware*, 384 F.3d at 810. Although Uvari argues that the instructions "did not require the government prove Uvari willfully caused or authorized another to sign the 2011 tax return," that is incorrect. The instructions informed the jury that, to convict on a causation theory, it had to find that Uvari "acted willfully" in "caus[ing] or authoriz[ing] another person to sign" the false tax return.

6. The district court properly considered the relevant statutes and sentencing guidelines when imposing the fine against Uvari. While the parties disagree about whether abuse of discretion or plain error governs our review of Uvari's fine, we affirm under either standard. A court may impose a fine "in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a). "The district court must consult the Guidelines' recommendation, the [18 U.S.C.] § 3553(a) factors, and the 18 U.S.C. § 3572(a) factors to determine the appropriateness of the

imposition of a fine and its amount." *United States v. Orlando*, 553 F.3d 1235, 1239 (9th Cir. 2009).

The district court properly considered all relevant factors. Both the government and defense counsel introduced and discussed the § 3572(a) factors, both in their sentencing memoranda and in argument before the district court. In sentencing Uvari, the district court explained "after I look at the statute and the sentencing guidelines, there's another set of factors I have to look at that are set forth in a statute known as 18 U.S.C. Section 3553(a)." The district court then considered each of the factors. In sentencing Uvari, the district court met its obligation, as it did not have to "tick off each of the § 3553(a) factors to show that it . . . considered them." *United States v. Lizarraras-Chacon*, 14 F.4th 961, 966 (9th Cir. 2021) (quotation marks and citation omitted).

It is Uvari's burden under U.S.S.G. § 5E1.2(a) to show an inability to pay a criminal fine. *United States v. Vargem*, 747 F.3d 724, 732 (9th Cir. 2014). Uvari informed the district court that he had filed for bankruptcy, his debt far exceeded his assets, his income is "minimal," and he is "essentially living with the support of his sister." But, as the district court recognized, in his bankruptcy filings, Uvari reported a monthly income of $5900. Uvari could have refuted this monthly income by filing relevant financial information. But Uvari provided *no* financial information to the Probation Office in its preparation of Uvari's Presentence Report. Nor did he

provide any documentary evidence of his assets or income to the district court at sentencing.  Because Uvari has not met his burden to show an inability to pay, and the district court sufficiently explained its imposition of the fine, we affirm the fine.

**AFFIRMED.**